# THE SUPREME COURT

### OF THE

## STATE OF NEVADA.

## APRIL TERM, 1877

---

[No. 751.]

## A. P. LECHLER, RESPONDENT, v. SAMUEL A. CHAPIN, APPELLANT.

TOWN SITE ACT CONSTRUED—ACT OF CONGRESS.—The act of congress was intended for the benefit and protection of the actual citizens of the town against those making claim to the land for purely speculative purposes.

IDEM—PARAMOUNT LAW.—The act of congress is the paramount law, and the legislature of this State cannot limit or extend the rights of claimants, or dispose of the trust in any other manner than is prescribed by the act of congress.

IDEM—WHEN PROOFS SHOULD BE MADE. — There is nothing in the act of congress which limits the proof upon the part of claimants to their interest in the land at the time of entry thereof in the land-office. If the land at that time is vacant, it is subject to location and occupancy by any person at any time prior to the issuance of a patent.

IDEM—UNOCCUPIED LANDS.—It was not the intention of congress, nor of the legislature of this State, that the unoccupied lands within the town site at the time of the entry should become the property of the citizens of the town.

IDEM—ACTUAL OCCUPANTS ONLY ENTITLED TO DEED.—To entitle an applicant to a deed, he must be an actual occupant, or entitled to the occupancy of the land.

ACTUAL POSSESSION.—*Eureka M. & S. Co.* v. *Way*, 11 Nev. 171, as to what constitutes actual possession, followed and approved.

ABANDONMENT OF POSSESSORY TITLE.—If a party abandons the land, or fails to keep his title good and leaves it vacant and unoccupied, he cannot strengthen his claim to the land by any act committed by him after the actual occupancy of the premises by another person.

APPEAL from the District Court of the Third Judicial District, Lyon County.

The facts appear in the opinion.

*Ellis & King*, for Appellant:

I. The court erred in overruling the demurrer. Our statute laws of 1867, p. 175, and 1869, p. 68, sec. 2, deals only with the rights of claimants to town property as they existed at the date of the entry of the lands by the proper authorities. The date of *entry* is the precise point of time at which the rights of the occupants of a town-site become fixed, at law and in equity.

After the right to enter the lands for the benefit of the occupants is once established (*a fortiori* after the actual entry and payment therefor), it would be unjust to permit any interference, therewith by those who may come afterwards, whether the lands are all to be divided among those occupying them, according to their respective interests or claims, or a part belongs to the town at large; for in the one case the trespass is upon the individual occupant, and in the other repose the rights of the whole body of the inhabitants of the town. (See *Castner* v. *Gunther*, 6 Min. 119.)

*R. H. Taylor*, for Respondent.
No brief on file.

By the Court, HAWLEY, C. J.:

On the thirtieth day of November, A.D. 1867, the district judge of Lyon county, acting under and in pursuance of the act of congress, entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867, entered in the land-office at Carson city, Nevada, the land embracing the town-site of Silver city, "in trust for the several use and benefit of the occupants thereof, according to their respective interests." (14

U. S. Stat. 541.)   On the twentieth day of September, A.D. 1873, the government of the United States issued and delivered to the district judge of said county a patent for said land.   The district judge thereafter gave due and proper notice of the issuance of said patent, in conformity with the provisions of the act of the legislature of this State, entitled "An act prescribing rules and regulations for the execution of the trust" arising under said act of congress, approved February 20, 1869 (Stat. 1869, 68), and the act amendatory thereof, approved March 8, 1871.   (Stat. 1871, 163.)

The plaintiff and defendant, within the time prescribed by said acts, each filed a statement in writing, claiming the land in controversy in this suit, and the district judge, in pursuance of the provisions of section 5 of the act of 1869, certified the papers and proceedings relating to the adverse claim of the respective parties to the district court of Lyon county.

The land in controversy is the east fifty feet of lots number 1, 4, 5, 8 and 9, in block number 18 of the town survey of Silver city, being fifty feet in width and two hundred feet in length.

The plaintiff in his complaint, after stating these facts, among other things, alleged: That on or about the fifteenth day of November, A.D. 1870, one W. H. Douglass, a citizen of the United States, and an inhabitant of said Silver city, went upon, took up, located, occupied and improved the land which was then unoccupied and vacant public land of the United States, and continued to occupy and possess the same until the twelfth day of April, A.D. 1871, when he conveyed the same, by deed, to C. D. McDuffie, W. E. Dunbar and D. L. Hastings; that on or about the twentieth day of January, A.D. 1873, the said C. D. McDuffie, W. E. Dunbar and D. L. Hastings, conveyed the said land and premises to the plaintiff; that from the said fifteenth day of November, A.D. 1870, the plaintiff and his grantors and predecessors have been rightfully in the occupancy and possession of said land; that plaintiff is now rightfully entitled to the possession of said land and to receive a deed for the same from the district judge; that said defendant has never

occupied, possessed, or improved said land, or any part thereof, and is not entitled to the possession of the same, or any part thereof, nor to a deed therefor. To this complaint the defendant interposed a demurrer upon the ground that it "does not state facts sufficient to constitute a cause of action." This demurrer was overruled, and the defendant filed an answer denying plaintiff's possession of the land, and asserting title in himself.

Upon the trial the plaintiff proved his claim substantially as alleged in his complaint. In 1870, when Douglas entered upon the land, he set stakes at the corners of the land and built a house upon the ground in controversy, and resided therein with his family until the time of the conveyance to McDuffie *et al.* The plaintiff, ever since the twentieth day of January, A. D. 1873, has resided upon said premises and used and occupied the same as a family residence. The defendant claimed a deed to the whole of block 18, and the proofs offered by him in support thereof established the following facts, viz: That on the fourteenth day of January, A. D. 1861, one Cyrus S. Kellogg, who is not shown to have had any interest in the land, conveyed the whole of block 18, to the defendant, as agent of, and in trust for the Carson River Gold and Silver Mining company; that during the year A. D. 1861, the defendant set posts at a distance of eighteen feet apart, around the whole of said block, with the exception of three lots on the northwest corner; that some of the posts remained upon the ground for two or three years but most of them were removed in a very short time and used as firewood; that in 1865 one William H. Pride, acting for the defendant, built and occupied a board cabin, twelve by eighteen feet in size, upon a part of block 18, and cut a ditch, one foot wide and one foot deep, around the whole block, except lots 2, 3 and 6, which ditch soon filled up with sand; that, in consideration of this work, the defendant conveyed to said Pride one lot in said block; that on the eighth day of March, A. D. 1865, the defendant leased the whole block to Pride for the period of one year; that Pride afterward sold and conveyed his interest in the lot to one J. F. Graham, who conveyed it

to defendant in 1873. Pride is not shown to have resided on the land at any time except in the year 1865, and for what length of time during that year does not appear. In August, 1870, the defendant moved to San Francisco, where he has ever since resided. There was no attempt upon the part of defendant to prove any occupancy of the land by himself or any of his grantors or predecessors in interest after the year 1865, or to prove any facts tending to show any acts of dominion or control over the premises, or any part thereof, until the year 1873, long after the entry of plaintiff's grantors, and while plaintiff was in the actual occupation of the ground in controversy in this suit, when the defendant caused one string of wire to be stretched around block 18, which wire was immediately removed by the plaintiff. Some slight vestiges of the posts placed on the ground in 1861 and slight traces of the ditch dug in 1865 were found at the time of trial. The ground is quite sandy and is valuable only for the purpose of a town lot.

With these facts in evidence the court, among other things not objected to, charged the jury as follows:

"First. The statute under which this action is instituted is to the effect that no one is entitled to the benefit of its provisions unless he is an actual occupant. Actual occupation is absolutely necessary in order to confer any right to a lot of land within the town-site;

"Second. The mere planting of posts around a lot of land and placing a wire around them, or digging a shallow ditch around it, not sufficient to constitute an inclosure, without a residence upon the lot or placing it to some useful purpose, do not constitute an actual occupation;

"Third. If the jury should believe from the evidence that the plaintiff entered upon the lot of land in controversy in this action, and that at the time of such entry such lot of land was unoccupied and vacant, and that the plaintiff, since such entry, has occupied such lot of land as his residence, then the jury should find for the plaintiff;

"Fourth. If the jury should believe, from the evidence, that the defendant was the first occupant of the lot of land,

and that while the defendant was such occupant that the plaintiff entered upon the lot and ousted the defendant therefrom, then the jury should find a verdict in favor of the defendant."

Under these instructions the jury found a verdict in favor of the plaintiff. The defendant then moved for a new trial, which was refused, and this appeal is taken by defendant from the order of court overruling his motion for a new trial and from the judgment of the court awarding the land to the plaintiff. The first and most important question presented for our decision is whether or not the court erred in overruling the demurrer to plaintiff's complaint. It is argued by appellant that inasmuch as the claim of plaintiff to the land in controversy is subsequent to the date of the entry of the land in the land-office for a town site, that he could not assert or claim any right to the land under the provisions of the law of this state which makes it the duty of the district judge holding the title to convey the same "to the person or persons who shall have, possess or be entitled to the right of possession or occupancy thereof, according to his, her or their several and respective right or interest in the same, as they existed in law or equity at the time of the entry of such lands." (Stat. of 1869, p. 68, sec. 2.)

Ordinarily, the rights of the parties under the law relates back to the time of the entry of the land, and their rights are to be determined as they existed at that date, and there can be no doubt that if the defendant in this case, at the time of the entry of the land by the district judge, was an "actual occupant" of the land within the meaning of that term as used in the act of congress, he would, as against the claim of plaintiff, have been entitled to a deed, unless he had abandoned his interest prior to the time when Douglas took up and claimed the lots in dispute. It was held in *Leech* v. *Ranch* (3 Min. 454), that when the proper proofs are made in the land-office the occupants of the town site acquire certain vested rights, and are *eo instanti* entitled to the benefits of the land, and this decision was followed in the case of *Castner* v. *Gunther* (6 Min. 119.) In both of

these cases cited and relied upon by appellant in support of his position, it was decided that the occupant of the land at the time the proofs were made, having fully complied with all the provisions of the law, was entitled to the lots in controversy, as against subsequent occupants having no superior equity. This principle will not be denied. But the facts in this case and the principle of law involved are, in many essential features, different from the case cited.

Here the only question presented by the demurrer is, whether a party who enters upon, locates and becomes an actual occupant of vacant and unoccupied lots of land within the limits of a town-site, after the entry of such town-site in the land-office, and before the issuance of a patent by the government of the United States, is entitled to a deed under the provisions of the act of congress.

In the consideration of this question we must not lose sight of the fact that the act of congress was intended for the benefit and protection of the actual citizens of the town against those making claim to the land for purely speculative purposes. (*Matter of Selby*, 6 Mich. 193; *Winfield Town Company* v. *Maris*, 11 Kan. 128; *Jones* v. *City of Petaluma*, 38 Cal. 397; *Alemany* v. *City of Petaluma*, 38 Cal. 554.)

It must also be remembered that the act of congress is the paramount law, and that the legislature of this state, in prescribing the rules and regulations for the execution of the trust arising under said act of congress, cannot limit or extend the rights of claimants, or dispose of the trust in any other manner than is prescribed by the act of congress; and, if there is any provision to that effect in the statute of this state, it is clearly inoperative and void. (*Winfield Town Company* v. *Maris, supra.*)

There is nothing in the act of congress which limits the proof upon the part of the respective claimants to their interest in the land as it existed at the time of the entry. We are of opinion that if the land in controversy in this suit was at that time vacant and unoccupied, as alleged in plaintiff's complaint, it was subject to location and occupancy by any person at any time prior to the issuance of a patent. Until the patent issues the government does not

part with its title.    It seems to us quite clear that it was not the intention of congress, nor of the legislature of this state, that the unoccupied lands within the town-site at the time of the entry by the judge should become the property of the citizens of the town.    Section 8 of the act of the legislature of this state only provides for the public sale of such lots as are not legally conveyed to the proper owners before the expiration of one year after the same shall be passed upon by the judge; or, in case of contest, within thirty days after such contest is finally determined, and all lots that have not been conveyed shall then be sold to the highest bidder and the proceeds applied as provided for in said section.

From this construction of the law it follows that the court did not err in overruling the demurrer to plaintiff's complaint.

Instructions one and two as given by the court are not erroneous.    This court has twice decided that to entitle an applicant under the law of congress, or of this state, to a deed, he must be an actual occupant or entitled to the occupancy of the land.    (*Treadway* v. *Wilder*, 8 Nev. 98; 9 Nev. 67.)

The land department of the government, in its rulings, declares that the only beneficiaries of the trust, under the town-site law, are the occupants of the town.    (1 Lester, Land Laws, 435.)    The several courts wherein this question has been presented have uniformly announced the same doctrine.    (*Leech* v. *Ranch*, 3 Min., 451; *Carson* v. *Smith*, 12 Min., 560; *Cash* v. *Spalding*, 6 Mich., 213; *Winfield Town Company* v. *Maris*, 11 Kan., 148; *Sherry* v. *Sampson*, 11 Kan., 615.)

These decisions were nearly all rendered under the act of congress, approved May 23, 1844 (5 U. S. Stat. 657), but the provisions of the act of 1867, in so far as this question is concerned, are identical with the provisions of the act of 1844.

To be an occupant, the party must have the actual use or possession of the land.    The acts necessary to constitute possession must, in a great measure, always depend upon

the character of the land, the locality and object for which it is taken up. But in all cases where a party relies solely upon possession, there must be a subjection of the land to the will and control of the claimant. The occupant must assert an exclusive ownership over the land, and his acts must at all times be in harmony with his title. His possession must, in the language of the authorities, be apparent, open, notorious, unequivocal, *pedis possessio,* carrying with it the evidences and marks of ownership. (*Eureka Mining and Smelting Company* v. *Way,* 11 Nev. 171, and authorities there cited.)

The second instruction is inartificially drawn, and contains matters which, under the proofs, were not strictly at issue in this case; but it is evident that the jury were not misled thereby to the prejudice of the defendant. There was no proof tending to show that the defendant ever stretched a wire around any portion of block 18, until long after the rights of plaintiff were acquired. Conceding it to be true that defendant by placing posts around the block in 1861, and digging a ditch around it and building a cabin on one corner of it in 1865, had planted a germ which might expand and open into a title; or, for argument sake, conceding that in the year 1865, during the occupancy of Pride, that defendant's title was good as against every one, except the government of the United States. Yet it must, as we think, be admitted that if the defendant failed to do such acts as were necessary to complete and perfect his title, or failed to keep his title good by keeping actual possession of the land, and that if the land was abandoned by him, or left vacant and unoccupied prior to the entry of plaintiff, then it certainly follows that defendant could not strengthen his claim to the land by any acts committed by him after the actual occupancy of the premises by plaintiff and his grantors.

The third and fourth instructions given by the court clearly and correctly state the rule of law applicable to the particular facts of this case.

The court did not err in overruling defendant's motion for a new trial. At the time Douglas entered upon and took

up the lots in controversy they were not, as testified to by him, claimed by any person, nor did any person at any time during his occupancy assert any claim to the land.

After the year 1865, the defendant did not, nor did any one in his behalf, reside upon the land. He did not cultivate it; he did not inclose it; he did not use it for any purpose whatever. In short, he did not exercise any acts of dominion or control over the land until 1873, after the plaintiff's rights had been acquired. Under these circumstances the rights which defendant had to the land in controversy in 1865 were lost by his failure to keep his claim good, and thereafter any person had the right to enter upon and take possession of said land and become an actual occupant thereof.

From the evidence in this case we are satisfied that at the time of the issuance of the patent by the United States the plaintiff's right to the possession of the land was superior to the claim of the defendant, and that the verdict of the jury was right.

The judgment of the district court is affirmed.

BEATTY, J., concurring:

The law under which this controversy is conducted (Stat. 1869, p. 68; Stat. 1871, p. 123) requires the town-site trustee to give public notice of the receipt of the patent, and provides that all claims to town lots which are not presented within six months after the first publication of such notice shall be forever barred. It does not require or authorize the trustee to take or to demand any proofs of the validity of the claims presented, but seems to contemplate that, except in case of adverse claims to the same lot or parcel of land, he shall at the expiration of the time for filing claims, as a matter of course, convey to all persons the lots or parcels claimed by them respectively.

In case of a contest, provision is made for litigating the adverse claims in the courts, and when the case is finally decided, the result is to be certified to the trustee, who is required to convey the title to the prevailing party.

It seems to me impossible to reconcile these provisions

of the law with the theory of the appellant that it was the intention of the Nevada legislature to confine the right of pre-emption to those who were occupants within the townsite at the date of the entry.   It is true the language quoted in the opinion of the court, from section 2 of the act, taken by itself, does warrant that construction.   But that language, so construed, is repugnant to the provisions above referred to, prescribing rules for the guidance of the trustee. If it had been intended to confine the right of pre-emption to those who were occupants at the date of the entry, surely some provision would have been made for the taking of proofs of such occupancy by the trustees in uncontested cases, and it would not have been assumed, as it seems to have been, that, in all contested cases, some one of the contestants must necessarily prevail and thereby become entitled to a conveyance from the trustees.   Under the law as it stands, all that is required of the claimant of any lot is that he shall, within six months of the first publication of a notice of the receipt of the patent, sign a statement in writing containing a correct description of the particular parcel or parcels which he claims to be entitled to receive, and deliver the same to the trustee.   If his claim is not contested within the time allowed for filing claims, there is no provision for any other proceedings whatever, and it follows necessarily that the trustee must make deeds, as a matter of course, in uncontested cases, or else that he may arbitrarily demand proofs and compel claimants who have fulfilled every requirement of the statute to resort to the courts for the means of compelling him to act.   I cannot believe that the legislature intended to invest the trustee with any such arbitrary discretion.   On the contrary, the whole idea of the law seems to have been this: All claimants must file their applications within a certain time.   Those which are not filed within a certain time shall be forever barred.   Consequently, in cases where there is no contest, as no one but the claimant is interested in the matter, he ought to have his deed without further trouble or expense; and in cases where there is a contest, as no one is interested in the matter except the contestants, that one who shows the best

right, as among themselves, to the occupancy of the premises, should prevail and get his deed. This conclusion is inevitable, if I have correctly apprehended the provisions of the law with respect to contests between adverse claimants; for no such contingency as a failure on the part of all the claimants appears to have been contemplated, although it is obvious that, of several claimants of the same parcel, no one of them might be able to prove an occupancy by himself or his predecessors at the date of the entry.

This very case affords a striking illustration of the absurd results which would follow from the construction of the law contended for by the appellant. The respondent, by his grantors and predecessors, was in possession of the lot in controversy long before the issuance of the patent, but not at the date of the entry of the town site. The appellant had occupied, but, according to the proof, had abandoned, the premises long before the entry. There is no possible construction of the laws of congress or of this state under which he would be entitled to a deed, and yet if his position is tenable the respondent cannot prevail in the contest, and, because the respondent cannot prevail, he must. This result is brought about in the following manner: The respondent, being the actual present occupant of the disputed premises, was naturally the first to apply for a deed. The appellant subsequently filed his adverse claim. Under the statute the contest was transferred to the district court, and there, by express provision of the law, the first claimant was plaintiff, the second claimant defendant. The plaintiff filed a complaint setting out the particulars of his claim, and the defendant demurred. If his construction of the law is correct, his demurrer should have been sustained, and, as the plaintiff could not have amended, there would have been nothing for the court to do except to give judgment for the defendant and certify the result to the trustee, who, under the law, must have given him a deed, although he had not shown, and never could have shown, any right to it whatever. This, it seems to me, is a complete *reductio ad absurdum.* It never could have been intended that a contestant without the shadow of a claim to a lot, should

obtain a deed for it, merely because the occupant and first applicant for a deed could not plead or prove an occupancy antedating the entry. There is, in my opinion, no other sensible construction of the law than that above indicated: that, when there is but one claim filed within the time allowed for that purpose, as all other claims are forever barred, the claimant who has filed his application shall receive his deed, as a matter of course, and when more than one claim has been filed, the courts to which the contest is transferred have only to try the right of occupancy as between the contestants. By the terms of the law, all other rights are barred by the failure to file claims in time, and as there is no right anywhere superior to that of the contestants, it is only reasonable that the most meritorious of them should prevail.

To reconcile the language of section 2 of the act to this view of its general scope and intent, it is only necessary to suppose that that language is to be limited in its application to cases in which there was an occupation at the date of the entry, and that it does not apply to cases in which the land was vacant and unoccupied at that date.

It will be seen that I have thus far confined myself to a discussion of the state law, without referring to the terms or the construction of the act of congress. I have done so for the reason that the appellant bases his argument exclusively upon the provisions of the state law, and because, as above stated, there is no possible construction of the law of congress under which he could have claimed the right to a deed from the trustee. But the law of congress is undoubtedly the paramount law, and must be allowed a controlling force so far as its provisions extend. It allows the entry and purchase of town-sites in trust for the "occupants." The word "occupants" as used in the act of congress must have some definite meaning, and it is of great practical importance whether it shall be construed to include those only who were occupying at the date of the entry, or to extend to those who commenced occupying at any time thereafter. In the opinion of the court, and of the district judge, it includes all who occupy before the issuance of the patent.

This conclusion, however, is opposed to the decision in the Minnesota cases referred to in the opinion of the court and to the intimations of opinion contained in the Michigan and Kansas cases. The result of those cases seems to be that the rights of occupants of town-sites all relate to the date of the entry; that all parcels of land occupied at that date must go to the occupants, their heirs and assigns, and that the unoccupied parcels within the town-site at the date of the entry belong to the town, as a community. To my mind neither of these opposing views is perfectly satisfactory, and, as it appears to me to be unnecessary to decide the question in order to reach a conclusion in this case, I prefer, so far as I am concerned, to leave it undecided until a case arises in which it is necessarily involved. For the purposes of this case it is sufficient to say that, under the state law, the plaintiff was entitled to prevail. The defendant had no rights under the law of congress; and, if the town community or any other person had or have any rights under that law superior to those of the plaintiff, they are not in question here and are not concluded by the decision in favor of the plaintiff. If the result is to give him a deed for a lot that belongs to the community of Silver city, the defendant at least has no right to complain.

For these reasons I concur in affirming the judgment.