IN THE MATTER OF THE AUTHORITY OF CARSON CITY TO REQUIRE PAYMENT FOR THE ABANDONMENT OF STREETS WITHIN THE CARSON TOWNSITE.

CARSON CITY, A CONSOLIDATED MUNICIPALITY AND POLITICAL SUBDIVISION OF THE STATE OF NEVADA, APPELLANT, v. CAPITAL CITY ENTERTAINMENT, INC.; AND MILLARD REALTY AND CONSTRUCTION, RESPONDENTS.

No. 34994

July 17, 2002                                    49 P.3d 632

[En banc reconsideration denied September 5, 2002]

*Noel S. Waters,* District Attorney, and *Mark R. Forsberg,* Chief Deputy District Attorney, Carson City; *Thomas J. Hall,* Reno, for Appellant.

_____

*Allison, MacKenzie, Russell, Pavlakis, Wright & Fagan, Ltd.,* Carson City, for Respondent Capital City Entertainment, Inc.

*Crowell Susich Owen & Tackes* and *Sandra Mae Pickens,* Carson City, for Respondent Millard Realty and Construction.

## OPINION ON REHEARING

*Per Curiam:*

On September 20, 2001, we issued an order of affirmance in this matter. Subsequently, appellant filed a rehearing petition, to which respondents filed answers. After reviewing the parties' submissions, as well as the briefs and appendix, we concluded that rehearing was warranted, and we granted the petition. We now withdraw our September 20, 2001 order and issue this opinion in its place.

Under NRS 278.480, a property owner may petition the municipality to abandon an abutting street. The property owner need not pay to acquire his or her proportionate part of the abandoned street if the municipality acquired the street by dedication from the abutting property owner or his or her predecessors. After charging one property owner for abandonment, but not another, and then reconsidering its decision to not charge, Carson City sought a ruling from the district court as to whether Carson City's streets had been acquired by dedication. The two property owners answered, contending that Carson City could not extract payment for abandoning portions of abutting streets. The district court ruled in favor of the property owners, and Carson City appealed. We conclude that the federal government dedicated the land underlying Carson City's streets to the public use, and that title vested in the city upon incorporation. Consequently, NRS 278.480 precludes Carson City from extracting payment as a condition of abandoning streets.

### BACKGROUND

In 1820, Congress passed an act establishing a framework for the sale of public lands to the highest bidders.[1] Congress expanded that framework in 1844 to include sales, for a minimum price, of remaining public lands settled upon and occupied as town sites:

> [W]henever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town site, . . . it shall be lawful . . . [if the town site is not incorporated] for the judges of the county court for the county in which such town may be situated, to enter,[2] at the proper

---

[1] Act of April 24, 1820, ch. 51, 3 Stat. 566.

[2] "Entry" "mean[s] the filing of an application by the proper officer with the register of the land office, and proof showing the performance of the statutory conditions respecting the settlement and occupancy of the land as a town site." *Lockwitz v. Larson,* 52 P. 279, 281 (Utah 1898).

land office, and at the minimum price, the land so settled and occupied, in trust, for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the [town] is situated.[3]

The 1844 Act was intended to protect citizens of towns that had grown up on federal lands, and to secure to them separately, at the minimum price, all land actually occupied by them for town purposes, and to them collectively such other lands as might be included within the town's limits.[4]

In 1860, a map of Carson City was platted and recorded by J.D. Sears, C.A. Sears, W.R. Sears and Jas. Thompson. The map shows blocks, lots, alleyways and streets. All of Nevada's roads were declared by the Territorial Legislature in 1861 to be ''public highways'' if the roads had been used as public highways at any time during the prior two years.[5]

In March 1864, Second Judicial District Judge Samuel H. Wright applied to the General Land Office for a patent to the 320-acre site underlying Carson City.[6] A plat of Carson City was filed in the General Land Office fifteen months later.

Before the General Land Office could act on Judge Wright's application, however, Congress, in July 1864, expressly repealed the Act of 1844,[7] substituting in its place a framework for establishing towns on the public domain and selling ''lots'' without regard to any Territorial or State legislation.[8] Nothing in the appellate record indicates that anyone attempted to establish Carson City or sell lots under the Act of 1864.

In January 1866, apparently unaware that the Act of 1844 had been repealed eighteen months earlier, the Nevada Legislature approved legislation intended to implement that act.[9] This enabling legislation comprised twelve sections. Only section seven mentioned ''streets'':

---

[3]Act of May 23, 1844, ch. 17, 5 Stat. 657, 657.

[4]*City of Denver v. Kent et al.,* 1 Colo. 336, 343 (1871).

[5]1861 Laws of Nevada, ch. 49, § 1, at 141, *replaced by* 1866 Nev. Stat., ch. 111, § 1, at 252 (''All public roads, and the streets and alleys in incorporated cities or towns in this State, now used or lawfully entitled to be used as such . . . are hereby declared to be public highways . . . .'').

[6]Thomas Donaldson, *The Public Domain, Its History, with Statistics* 301 (1884).

[7]Act of July 1, 1864, ch. 205, § 5, 13 Stat. 343, 344.

[8]*Id.* § 2, 13 Stat. at 343-44.

[9]1866 Nev. Stat., ch. 12, § 1, at 54.

> After the issuance of the patent for such lands, it shall be the duty of the . . . Judge . . . to make out, execute and deliver to each person who may be legally entitled to the same, a deed in fee simple, for such part or parts, lot or lots, of land, on payment of his proper and due proportion of the purchase money for such land, *together with his proportion of such sum as may be necessary to pay for streets, alleys, squares and public grounds, not exceeding twenty-five cents for each lot . . . .*[10]

In September 1866, eight months after the Nevada Legislature passed its enabling legislation, the General Land Office issued a patent for the 320-acre site occupied by the town of Carson City. The patent was issued to Judge Wright ''in trust for the several use and benefit of'' Carson City's occupants, ''according to their respective interests, by virtue of [the 1844] Act of Congress.'' The patent further recited that Judge Wright had paid the purchase price, and that the site was shown on ''the official plat of the survey of the said lands returned to the General Land Office by the surveyor general.''

In March 1867, Congress resurrected the Act of 1844, again providing that public lands settled upon and occupied as town sites could be

> enter[ed] at the proper land office, and at the minimum price, . . . in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the [town] may be situated.[11]

In February 1869, the Nevada Legislature prescribed rules and regulations intended to carry the congressional resurrection into effect.[12] These rules and regulations did not deviate in material part from the earlier enabling legislation.[13] At some point, Judge Wright began conveying the lots in Carson City.

---

[10]*Id.* § 7, at 55 (emphasis added).

[11]Act of March 2, 1867, ch. 177, 14 Stat. 541, 541. The Act of 1867 was codified in the Revised Statutes of the United States at section 2387. The Act of 1864 was codified at section 2382, and remained as an alternate method for establishing towns on public lands. 2 Henry N. Copp, *Copp's Public Land Laws* 1010-13 (1890).

[12]1869 Nev. Stat., ch. 28, at 68-70, *amended by* 1871 Nev. Stat., ch. 82, at 163-64.

[13]*Compare* 1866 Nev. Stat., ch. 12, at 54-56, *with* 1869 Nev. Stat., ch. 28, at 68-70, *amended by* 1871 Nev. Stat., ch. 82, at 163-64.

In 1905, the Nevada Legislature enacted legislation allowing property owners to petition local government for the vacation of abutting streets.[14] Presently codified at NRS 278.480, the law provides that, "[i]f the street was acquired by dedication from the abutting property owners or their predecessors in interest, no payment is required for title to the proportionate part of the street reverted to each abutting property owner."[15] But "[i]f the street was not acquired by dedication, the governing body may" insist on a reasonable payment for abandoning its title to the street.[16]

In 1988, 122 years after Judge Wright obtained the patent for the land underlying Carson City, Capital City Entertainment, Inc. ("CCE") petitioned the Carson City Board of Supervisors ("Board") to abandon a portion of Ninth Street abutting CCE's property. Carson City conveyed the land underlying the portion of Ninth Street to CCE for $125,000 in 1989.

In 1996, Millard Realty and Construction ("Millard") petitioned the Board for the abandonment of portions of Eighth, Ninth and South Plaza Streets abutting Millard's property. The Board approved the abandonment in 1997, and conveyed title to Millard. Carson City did not seek payment for its abandonment of these streets. In 1998, the Board reconsidered its decision to not require payment from Millard. The Community Development Department recommended to the Board that Millard pay $128,898 for the abandonment.

In 1999, Carson City petitioned the district court to determine whether Carson City could lawfully demand payment for abandoning title to its streets. Millard and CCE filed answers to the petition; Millard sought to avoid paying for abandonment, and CCE sought a refund of its payment. The district court concluded that the original lot purchasers "acquired certain ownership rights to the streets and alleys" because they were required, under Nevada's enabling legislation, to pay not only for the lots, but also "such sum as may be necessary . . . for streets, alleys, squares and public grounds." The district court found this conclusion "consistent with the basic principle of real property law in Nevada[,] that it is presumed that title to the centerline of a right-of-way is vested in the abutting land owner." But the district court also determined that the streets and alleys were dedicated to Carson City when the town site plat was recorded in 1860. The dedication mechanism was described only as a "public dedication." Finally, the district court ruled that no statute of limitations would bar CCE from seeking a refund after ten years.

---

[14]1905 Nev. Stat., ch. 126, § 9, at 225.

[15]NRS 278.480(8) (previously codified as NRS 278.480(7)).

[16]*Id.*

## DISCUSSION

A dedication is a gift of land by the owner for an appropriate public use, such as a street.[17] Dedications may be classified as either statutory or common law.[18] A statutory dedication operates by way of grant, vesting in the municipality the fee for public use.[19] Under a common-law dedication, however, the fee of land dedicated for a street remains in the owner, subject to a public easement in the land, which is vested in the municipality.[20] A common-law dedication rests upon the doctrine of estoppel in pais, which extends an owner-permitted use of private property to protect the public's expectation of continued use.[21] The recording of a plat may qualify as a statutory dedication, or at least evidence of an intent to make a common-law dedication.[22] Finally, the party asserting a dedication bears the burden of proof.[23]

Although the district court properly concluded that Carson City may not require payment for its abandonment of the streets abutting Millard's and CCE's properties, the district court's reasoning was flawed.[24] First, the 1860 platting and recording of the map showing lots and streets could not have effected a dedication of the streets because title to those lots and streets remained in the federal government until 1866, when Judge Wright received the patent for the land underlying Carson City. In *Lechler v. Chapin*,[25] we observed that the federal government does not part with its title until the patent issues. The California Court of Appeal has likewise noted that "whatever rights or equities the occupants [of

[17]*Rainbow Blvd. v. State ex rel. Dep't Hwys.*, 96 Nev. 637, 641, 615 P.2d 931, 933 (1980); *Shearer v. City of Reno*, 36 Nev. 443, 449, 136 P. 705, 707 (1913).

[18]26 C.J.S. *Dedication* § 1, at 279 (2001); 11A Eugene McQuillin, *The Law of Municipal Corporations* § 33.03, at 314 (3d rev. ed. 2000).

[19]11A McQuillin, *supra* note 18, § 33.69, at 511-15.

[20]11A *id.* § 33.68, at 508-10.

[21]11A *id.* § 33.03, at 318; *see also City of Greenwood Village v. Boyd*, 624 P.2d 362, 364 (Colo. Ct. App. 1981) ("A statutory dedication operates by way of grant and ordinarily conveys the full fee title to the subject property, whereas a common law dedication operates by way of 'estoppel in pais' and ordinarily conveys only an easement.").

[22]11A McQuillin, *supra* note 18, § 33.24, at 362-63, 370.

[23]11A *id.* § 33.37, at 415; *accord* 26 C.J.S. *Dedication* § 49, at 347 (2001).

[24]"If a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons." *Hotel Riviera, Inc. v. Torres*, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).

[25]12 Nev. 65, 71-72 (1877).

a town site] ever obtained in and to any part of the town site[,] they obtained by virtue of the patent and not by reason of anything that had transpired before that time.''[26] Only the owner of a fee simple estate, or someone expressly authorized by such an owner, can make a dedication of land,[27] and only Congress can dedicate federal land.[28] Thus, the 1860 platting and recording of the Carson City map could not have worked a dedication of the streets and alleys because the federal government, rather than the platters, owned the land underlying Carson City.

Also, the district court and the parties failed to consider whether the federal government even parted with its title, given that the September 1866 federal patent was issued ''by virtue of'' the congressional Act of 1844, which had been repealed in July 1864. The Colorado Supreme Court, in *Schwenke v. Union Depot, Etc., Co.,*[29] declared that ''if a patent on its face shows that it is issued under and in pursuance of certain acts of congress, and it is true that such acts were repealed prior to the application therefor, the patent is void.''[30] In *Schwenke,* the court held that the 1865 patent for the Denver town site was valid even though the patent was ''issued in pursuance of'' the Act of 1844 because the patent also recited issuance pursuant to a later congressional act specifically extending the 1844 Act '' 'for the relief of the citizens of Denver.' ''[31]

It does not appear that Congress ever extended the Act of 1844 for the benefit of Carson City's residents. But Judge Wright applied for the patent to the land underlying Carson City roughly four months before the 1844 Act was repealed. A patent applicant's rights vest upon compliance with the terms and conditions necessary to acquire a patent.[32] Here, Judge Wright's entitlement

---

[26]*Town of Red Bluff v. Walbridge,* 116 P. 77, 81 (Cal. Ct. App. 1911).

[27]26 C.J.S. *Dedication* § 7, at 285 (2001).

[28]*United States v. Sixteen Parcels of Land, Etc.,* 281 F.2d 271, 274 (8th Cir. 1960).

[29]4 P. 905 (Colo. 1884).

[30]*Id.* at 906; *accord Anderson v. Woodward,* 180 P. 296, 298 (Colo. 1919) (stating that '' 'where Congress has made no provision for the disposition of [public] land, or the statute under which the patent was issued had been previously repealed, . . . a patent for such land is void' '' (citation omitted)).

[31]*Schwenke,* 4 P. at 906 (quoting Act of May 28, 1864, ch. 99, 13 Stat. 94).

[32]*See Wirth v. Branson,* 98 U.S. 118, 121 (1878); *Boise City v. Wilkinson,* 102 P. 148, 150 (Idaho 1909); *Lechler,* 12 Nev. at 70.

to a patent apparently vested when the 1844 Act was still viable, and thus, the General Land Office's issuance of the patent based on that act, but after its repeal, arguably did not void the patent. This result is not inconsistent with the United States Supreme Court's holding in *Stark v. Starrs,*[33] that "[w]hen . . . the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary, to cut off intervening claimants."

Nevertheless, in 1891, Congress passed legislation providing that "suits by the United States to vacate and annul any patent" already issued would be barred if not brought before March 3, 1896.[34] The effect of the legislation was to validate patents void upon issuance but not timely challenged by the United States.[35] The legislation arose from the public's insecurity and loss of confidence in the integrity and value of patent titles to public lands, which had been caused by conflicting claims, and was passed to make patent titles dependable and secure when the limitations period expired.[36] It does not appear that the United States ever brought an action to vacate and annul the patent for Carson City. Consequently, we conclude that the patent to the land underlying Carson City is not void.

We next determine the patent's effect on the title to the land underlying Carson City. Upon entry of the town site, the judge to whom the patent issued became seized of the town site in trust for the several uses and benefits of the inhabitants, according to their respective interests.[37] In other words, the legal title vested in the trustee in his or her official and public capacity, and, simultaneously with the town site's entry, an absolute right in the trust vested in the beneficiaries.[38] The execution of the trust was limited, however, in both the 1844 and 1867 town site acts, "to the disposal of the lots."[39] The 1864 town site act likewise spoke only to the disposal of "lots."[40] Indeed, the United States Supreme

---

[33]73 U.S. 402, 418 (1867).

[34]Act of March 3, 1891, ch. 561, § 8, 26 Stat. 1095, 1099, *amended by* Act of March 2, 1896, ch. 39, § 1, 29 Stat. 42, 42-43 (extending the limitations period for patents issued under railroad or wagon road grants).

[35]*United States v. Chandler-Dunbar Co.,* 209 U.S. 447, 450 (1908).

[36]*United States v. Whited & Wheless,* 246 U.S. 552, 562 (1918).

[37]*Coy et al. v. Coy et al.,* 15 Minn. 119, 123 (1870).

[38]*McCloskey v. Pacific Coast Co.,* 160 F. 794, 798 (9th Cir. 1908); *accord Leech v. Rauch,* 3 Minn. 448, 454 (1859).

[39]Act of May 23, 1844, ch. 17, 5 Stat. 657, 657; Act of March 2, 1867, ch. 177, 14 Stat. 541, 541.

[40]Act of July 1, 1864, ch. 205, § 2, 13 Stat. 343, 343-44.

Court stated in *Ashby v. Hall*[41] that the power vested in the State and Territorial legislatures "in the execution of the trust, upon which the entry was made, was confined to regulations for the disposal of the lots and the proceeds of the sales." This limitation secured to a town's occupants, collectively, as a community, the existing streets and alleys within the town's limits.[42] As explained below, we conclude that Carson City acquired its interest in the existing streets and alleys through a dedication from the federal government to the local government. *Ashby* provides the starting point for this discussion.

In 1866, the town of Helena, Montana, was laid out, surveyed, and platted into streets, blocks, lots, and alleys. Soon thereafter, the defendant fenced in a portion of an alley abutting the plaintiffs' lots, and began occupying the alley. Title to the land occupied by the town, including the streets and alleys, was in the United States until the town site's entry in 1869.[43] After the town site's entry, the county commissioners approved a new map of the town, which did not show the alley, and the trustee judge deeded the occupied portion of the alley to the defendant.[44]

The plaintiffs sued to remove the obstruction. The trial court determined that the conveyance to the defendant was void because the plaintiffs and other adjacent lot owners had a valid right of way in the alley at the time of the town site's entry, and the right of way was entered in connection with the town site in trust for the town's occupants pursuant to the 1867 town site act.[45] The Montana Supreme Court affirmed, holding that "the grant of the lots by congress to the occupants according to their respective interests necessarily recognized the existence of the streets and alleys as then laid out and used, and *such grant was a dedication of the same to the public use*."[46] The court reasoned that "[d]isposing of the lands covered by a town to the occupants, according to their several rights and interests, could not be done" without reserving to the public the use of the streets and alleys.[47]

The United States Supreme Court affirmed, suggesting that the local government acquired title to the streets subject to an easement in the public:

> The very notion of land settled upon and occupied as a townsite implies the existence of streets, alleys, lots, and blocks;

[41]119 U.S. 526, 529-30 (1886).

[42]*See Kent,* 1 Colo. at 343; *Bingham v. City of Walla Walla,* 13 P. 408, 412 (Wash. 1887); *Scully v. Squier,* 90 P. 573, 576 (Idaho 1907), *aff'd,* 215 U.S. 144 (1909).

[43]*Ashby,* 119 U.S. at 527.

[44]*Id.* at 528.

[45]*Id.*

[46]*Parcher v. Ashby,* 1 P. 204, 208 (Mont. 1883) (emphasis added).

[47]*Id.* at 207.

and for the possession of the lots, and their convenient use and enjoyment, there must of necessity be appurtenant to them a right of way over adjacent streets and alleys. The entry of the land carried with it such a right of way. *The streets and alleys were not afterwards at the disposal of the [local] government, except as subject to such easement.*[48]

This emphasized language restates the rule that the fee which passes by a statutory dedication is subject to the dedication's purpose,[49] and suggests that title vested in the municipality, subject to the public right of way.

The Idaho Supreme Court's decision in *Boise City v. Wilkinson*[50] also illuminates the nature of the trust and dedication. In *Wilkinson,* the court determined that a town site's streets and alleys had been dedicated to the public use by the trustee's filing of a plat and the federal government's issuance of a patent under the 1867 town site act, and also by a city ordinance declaring all streets and alleys to be public highways.[51] Consequently, the court held that the trustee lacked authority to convey title to land underlying a street to an occupying settler because it "would change the character of the trust in relation to the land dedicated for street purposes."[52] This quoted rationale acknowledges that the trust's execution was limited to the disposal of lots and sales proceeds, and that the federal government's dedication of streets was intended to benefit lot occupants as well as the general public.[53]

Although lot occupants and the general public benefit whether a dedication is considered statutory and passes title to the municipality or is considered common law and merely estops abutting property owners from interfering with the land's use as a street,[54] we deduce that the dedication scheme intended by the town site acts vests the fee in the municipality upon incorporation. Until that time, the fee to the property remains in abeyance.[55] We are not alone in the view that statutory, rather than common-law, dedication principles are at play in town site cases. In *Town of Red Bluff v. Walbridge,*[56] the California Court of Appeal concluded that patent issuance conferred upon the municipality title to the

---

[48]*Ashby v. Hall,* 119 U.S. at 529 (emphasis added).

[49]11A McQuillin, *supra* note 18, § 33.69, at 513.

[50]102 P. 148 (Idaho 1909).

[51]*Id.* at 152, 154.

[52]*Id.* at 153.

[53]*Id.* at 150, 152.

[54]*Dooly Block v. Salt Lake Rapid Transit Co.,* 33 P. 229, 232 (Utah 1893).

[55]11A McQuillin, *supra* note 18, § 33.69, at 512-13.

[56]116 P. 77 (Cal. Ct. App. 1911).

town site's streets and alleys, subject to a public easement in the streets and alleys.[57] Red Bluff was established by patent under the 1867 town site act.[58] Before the patent issued, a map of the town showing streets, alleys, blocks and lots had been filed, the California Legislature had declared the streets and alleys in Red Bluff to be public highways, and Congress had granted rights of way on the public lands for highway construction.[59] After the town's map had been prepared, the defendant or one of his predecessors erected a fence, encroaching upon a street.[60] Red Bluff sued to have the fence removed. The trial court concluded that the deed from the judge trustee, granted in accordance with the town site act, did not carry with it the enclosed street, and therefore, the fence could not be maintained:

[T]he federal government, in deeding the town site to the county judge, did not intend to give to any private individual an equitable or any kind of a title to those parts of the town site that were then legally constituted public highways. It intended that all public highways thereon at the time of the patent should remain public highways until abandoned by some competent authority and that the other parts of the town site should, under appropriate regulations to be prescribed by the Legislature, be deeded to those who were bona fide occupants at the date of the patent.[61]

The Court of Appeal affirmed, stating that Red Bluff did not need ''to show occupancy of the street for highway purposes in order to show title'' because its title ''deraigned from the government.''[62]

Here, we conclude that the federal government dedicated the land underlying Carson City's streets to the public use, and that title vested in the city upon incorporation. A different conclusion would permit the town site's trustee to do indirectly what the trustee could not do directly—pass title to streets in conjunction with a conveyance of the abutting lot while being prohibited from conveying the same title to an occupant of the street. Further, as in *Wilkinson* and *Red Bluff,* when the federal government issued the patent for Carson City, already in place were a congressional

---

[57]*Id.* at 80, 82.

[58]*Id.* at 77; *Roberts v. Ward,* 84 P. 430, 431 (Cal. Ct. App. 1906).

[59]*Town of Red Bluff,* 116 P. at 79, 80; Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (''[T]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.'').

[60]*Town of Red Bluff,* 116 P. at 79.

[61]*Id.* at 79-80.

[62]*Id.* at 82.

grant of rights of way for public highways across public lands, and declarations from Nevada's territorial and state legislatures that the roads in Nevada were public highways. Conveying title to these highways to the occupants of lots is incompatible with the grant and declarations.[63]

In reaching our conclusion, we need not decide whether Nevada's enabling legislation authorized the conveyance of title to the streets to the lot occupants. Regardless of the Legislature's intent, it could only direct in what manner the trust would be executed. It could not, under a pretense of providing rules for the trust's execution, change its character, or deprive those for whom it is intended of any trust benefits.[64] The Legislature could only authorize the trustees to dispose of lots and sales proceeds. We also do not determine whether the 1866 enabling legislation was valid, given that it was enacted to implement the 1844 town site act, which had been repealed before the enabling legislation's passage.[65]

Under NRS 278.480, "[i]f the street was acquired by dedication from the abutting property owners *or their predecessors in interest,* no payment is required for title to the proportionate part of the street reverted to each abutting property owner."[66] A predecessor in interest to both CCE and Millard is the federal government. Because the federal government dedicated the streets in Carson City to public use, with title vesting in the municipality, NRS 278.480 precludes Carson City from extracting payment as a condition of abandoning streets.

---

[63]We do not agree with the Minnesota Supreme Court's determination that a town site trustee's deed passes "legal title to the fee of the land to the center of the street adjoining" the occupied lot. *Harrington et al. v. The St. Paul & Sioux City Railroad Co.,* 17 Minn. 215, 221 (1871). *Harrington* was decided before *Ashby* and does not acknowledge that the trustee's duties under the 1844 town site act were limited to "the disposal of the lots . . . and the proceeds of the sales thereof." Act of May 23, 1844, ch. 17, 5 Stat. 657, 657. Rather, the *Harrington* court rhetorically asks, "Why should not [the trustee's] deed of the lots be held to execute his trust as to this street also?" 17 Minn. at 223. Further, the court had no occasion to consider the 1866 congressional grant of public lands to highway purposes because the town had apparently been patented prior to the grant. *See id.* Finally, the court misstated the law of dedications by declaring that both statutory and common-law dedications pass the fee to the center of streets to abutting land owners. *Id.* at 224.

[64]*Winfield Town Company v. Maris,* 11 Kan. 128, 151 (1873); *see also Lechler,* 12 Nev. at 71.

[65]Act of July 1, 1864, ch. 205, § 5, 13 Stat. 343, 344.

[66]NRS 278.480(8) (emphasis added) (previously codified as NRS 278.480(7)).

Accordingly, we affirm the declaratory judgment, but for different reasons than expressed by the district court.[67]

---

[67]We express no opinion on the district court's determination that the "statute of limitations [for tort or breach of contract] is not a defense to" CCE seeking reimbursement for CCE's abandonment payment. Carson City has not challenged that determination on appeal. We note only that NRS 278.0235 provides a twenty-five-day limitations period for actions "commenced for the purpose of seeking judicial relief or review from or with respect to any final action, decision or order of any governing body, commission or board authorized by NRS 278.010 to 278.630 [the planning and zoning statutes]."