ROSS E. STOLTZ, Appellant, *v.* W. RAY GRIMM, RICH-
ARD E. TAYLOR, and THE CITY OF RENO, Respond-
ents.

No. 14527

October 4, 1984                    689 P.2d 927

*Leonard T. Howard,* Reno, for Appellant.

*Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane,* Reno
for Respondents Grimm and Taylor.

*Cromer, Barker, Michaelson, Gillock & Rawlings; Charles
W. Spann,* Reno for Respondent City of Reno.

## OPINION

*Per Curiam:*

This is an appeal from a judgment granting specific performance of a land sales contract with an accompanying equitable accounting. The central issue in this appeal is the propriety of the trial court's order granting specific performance of Stoltz's agreement to sell a certain five-acre parcel of land known as the Covered Wagon Mobile Home Park to the respondents, Grimm and Taylor. Stoltz repudiated the contract after being informed by the City of Reno that he was required to dedicate a

33-foot strip of land for a roadway easement as a condition for the approval of a parcel map subdividing Stoltz's property.

Historically, the parcel of land at the heart of this dispute originated from two 1952 land patents from the U.S. Government covering 10 acres of contiguous land. Both parcels contained the following reservation:

> This patent is issued subject to an easement for a road-way not exceeding 33 feet in width, to be constructed across said land, or as near as possible, to the exterior boundariers.

On November 1, 1962, Stoltz dedicated a 33-foot strip of land across the northern boundary for the development of Hoge Road. Stoltz testified that he never inquired into whether the Hoge Road dedication satisfied the reservation in the land patent and that he could not remember whether the county requested the dedication or not.

Over the years, the original 10-acre parcel was divided into three separate lots, designated as lots A, B, and C. On lot A, Stoltz constructed a barn and a residence. Lot B was developed into the Covered Wagon Mobile Home Park. Lot C was left undeveloped.

In April of 1969, the City of Reno prepared a layout for the proposed acquisition of "Stoltz Road." According to the proposed plan, the Stoltz Road right-of-way would traverse the western edge of all three lots owned by Stoltz by 33 feet and would pass directly over the barn constructed by Stoltz on lot A. Although Stoltz maintained that the 33-foot reservation contained in the land patent had been satisfied by his 1962 dedication, various landowners abutting Stoltz Road, including Stoltz's son, dedicated the 33-foot right-of-way to the city.

In January, 1978, respondents Grimm and Taylor entered into an agreement for the purchase of the 5-acre mobile home park located on lot B. Under the terms of the agreement, Stoltz was required to have the property surveyed and a parcel map for the subdivision of the property approved by the city.[1] The agreement did not mention either the City of Reno's proposed acquisition or the 33-foot reservation in the land patent.

Shortly after entering into the contract to purchase the Mobile Home Park, Grimm and Taylor purchased lot C from Stoltz and developed it into the Bonanza R. V. Park.

In March, 1978, a parcel map prepared under the direction of Stoltz was submitted to the City of Reno. The submitted

[1]NRS 278.461(1) reads in part:

> A Person who proposes to divide any land for transfer or development into four or fewer lots shall file a parcel map in the office of the County recorder. . . .

parcel map did not reflect the proposed development of Stoltz Road. Accordingly, the City of Reno informed Stoltz that the parcel map would not be approved unless modified to show the existence of the road.

In early April, 1978, Stoltz informed Grimm and Taylor that he would not proceed with the sale because of the dedication required by the city. Grimm and Taylor were prepared to go through with the agreement despite losing the western 33 feet of the property and therefore filed a complaint for specific performance on April 26, 1978. Stoltz appeals from a judgment granting specific performance, awarding damages pursuant to an equitable accounting, and denying Stoltz's third party complaint agianst the City of Reno.

## Specific Performance

Stoltz contends that specific performance was improper under the circumstances of this case for a number of reasons. Initially, Stoltz seeks relief from his contractual obligations under the doctrine of impossibility, arguing that the required dedication of "Stoltz Road" prevented him from conveying enough land to provide 44 trailer spaces on lot B as required by the contract.

In reviewing the record, we are not persuaded by Stoltz's claim of impossibility. Grimm and Taylor have waived the defect in Stoltz's title and are willing to purchase the property as burdened by the easement. A seller may not rely on the deficiency in his own title to defeat the buyer's right to specific performance. Carcione v. Clark, 96 Nev. 808, 618 P.2d 346 (1980) (buyer waived defect in title due to *lis pendens* on property).

Stoltz next claims that the required dedication of portions of lot A to the City of Reno as a condition for obtaining a parcel map amounts to undue hardship. We disagree. The trial court found that Stoltz knew of the city's intended use of Stoltz Road when he entered into the contract for the sale of lot B to Grimm and Taylor .[2] Despite this knowledge, Stoltz obligated himself

---

[2] In the case at hand, there is substantial evidence to support the district court's finding that Stoltz was aware of the easement claimed by the city on all parcels abutting Stoltz Road prior to his entering into a contract with Grimm and Taylor. Stoltz testified that he was aware of the reservation in his patent; that he knew of the city's claims against abutting landowners along Stoltz Road who dedicated the western portion of the road; and that he discussed the city's claimed easement with his son, C. D. Stoltz, who owned the northwest parcel adjacent to Stoltz's land and which similarly had been subject to the 1962 Hoge Road dedication.

to obtain the city's approval of a parcel map. Stoltz therefore assumed the risk that the city would require the Stoltz Road easement to be reflected on the parcel map. Any hardship resulting from the specific performance of the agreement was foreseeable.

Finally, Stoltz cites McCann v. Paul, 90 Nev. 102, 520 P.2 610 (1974), for the proposition that specific performance is only proper if the purchaser has paid a substantial portion of the purchase price, or has made substantial improvements on the property, or if the failure to give the requested relief would amount to an unconscionable forfeiture.

Stoltz's reliance upon *McCann* is misplaced. *McCann* concerned a trial court's failure to grant specific performance requested by a buyer who tendered performance 29 days late. In affirming the trial court's decision not to grant specific performance, the court stated:

> In these instances where equitable relief is granted to the purchaser, we normally find that he has paid a considerable portion of the purchase price, or has entered upon the property and enhanced its value by placing improvements thereon, or some other circumstances that would constitute a forfeiture of substance, if such relief were not given.

90 Nev. at 104 (citations omitted).

The language quoted above is merely illustrative of the factors that are generally present when specific performance is granted and is not phrased in mandatory terms as Stoltz contends. Instead, our decision in *Carcione* is dispositive. In *Carcione,* the purchasers of a residential home sought specific performance to compel the sellers to convey. The district court found that the buyers had attempted to fully perform but that the conveyance was hindered by the seller's refusal to convey. In discussing whether specific performance was appropriate the court stated:

> Equity regards as done what in good conscience ought to be done. Specific performance is available when the terms of the contract are definite and certain, the remedy at law is inadequate, the plaintiff has tendered performance and the court is willing to order it.

96 Nev. at 811 (citations omitted).

In the case at hand, the subject matter of the contract was real property, and as such is unique. *See* Locken v. Locken, 98 Nev. 369, 372, 650 P.2d 803 (1982). An action at law for breach of damages would therefore be inadequate. *Carcione,* above.

Since Grimm and Taylor are ready, willing, and able to perform, under the holding of *Carcione,* the district court did not abuse its discretion in granting specific performance.

## Equitable Accounting

Stoltz claims a number of errors were committed by the trial court in allowing certain items in the equitable accouting. In most of these matters the court's conclusions and judgment were based on substantial evidence and were properly awarded. However, in allowing recovery to Grimm and Taylor for costs of a sewer system and for costs of construction of a fence we believe the trial court erred.

The record discloses that Grimm and Taylor intended to operate a recreational vehicle park on lot C in conjunction with the mobile home park on lot B. Their plans included the construction of a gravity sewage system which would transport waste from lot C through the subject mobile home park on lot B. They claim that by reason of Stoltz's repudiation of the contract such a gravity system could not be installed and that, instead, a more expensive "sewer lift station" had to be put in place.

Grimm and Taylor also claim that they are entitled to recover the cost of installing a fence on lot C which was required by a city ordinance as a condition for operating the recreational vehicle park because the properties were not, in view of the repudiation, commonly owned.

In granting specific performance of a contract, a court of equity may award monetary compensation as incidental relief where specific performace does not by itself afford complete relief. Fleischer v. Buccilli, 163 N.W.2d 637 (Mich.App. 1967). Where a purchaser of land is awarded specific performance of the purchase contract, he or she is entitled to an allowance for the losses occasioned by the vendor's delay in conveying the property. Miller v. Talbott, 211 A.2d 741, 748 (Md.App. 1965). The purchaser is not, however, entitled to recover for losses which were not the natural and direct result or proximate cause of the failure to convey as planned. White v. Felkel, 82 S.E.2d 813 (S.C. 1954).

In the case at hand, both the sewer lift station and the installment of the fence were expenses relating to the use and operation of a parcel of land which had not even been purchased when the parties entered into the present contract. As such, the increased costs did not naturally flow from the delay in conveying lot B as originally planned, but instead resulted from the

subsequent decision by Grimm and Taylor to acquire lot C and to operate both businesses jointly. The costs are therefore too remote. The award of compensation for the additional costs of the sewer lift station and the fence is reversed and the matter remanded to the trial court for the judgment to be reduced accordingly.

As to the remaining allegations of error argued by Stoltz against the judgment in favor of Grimm and Taylor, we find them to be without merit.

### *Liability of the City of Reno*

The remaining question to be considered is whether the trial court correctly ruled that the city had the power to require the inclusion of the Stoltz Road right-of-way in the parcel map as a condition for obtaining the approval of the submitted map by the city.

The city argues that Stoltz was required to dedicate the land to the city under the language in the 1952 land patents. We agree. There is substantial evidence to support the trial court's finding that the 1962 dedication of Hoge Road by Stoltz was voluntary. Stoltz has therefore failed to prove that the reservation contained in the 1952 land patent had been previously satisfied. Since the 1962 dedication was voluntary and not in satisfaction of the patent reservation, the 1979 dedication requirement was proper.

The award of the increased costs associated with the sewer lift station and the fence are reversed. The rest of the judgment is affirmed.