**KERN RIVER GAS TRANSMISSION COMPANY, Plaintiff,**

**v.**

**18.91 ACRES OF LAND, MORE OR LESS, LOCATED IN RIGHTS–OF–WAY IN CLARK COUNTY, NEVADA: 2.98 Acres of Land, More or Less, Located in Rights–Of–Way in the City of Las Vegas; 2.55 Acres of Land, More or Less, Located in Rights–Of–Way in the City of North Las Vegas, Nevada; Clark County, Nevada, a political subdivision of the State of Nevada; Las Vegas Valley Water District, a political subdivision of the State of Nevada; City of Las Vegas, Nevada, a municipal corporation; City of North Las Vegas, Nevada, a municipal corporation, Defendants.**

**No. CV–S–90–638–PMP (RJJ).**

United States District Court, D. Nevada.

Aug. 18, 1992.

John C. Renshaw, Thomas F. Kummer, Philip C. Van Alstyne, Vargas & Bartlett, Las Vegas, NV, for plaintiffs.

Christopher D. Figgins, Dale E. Haley, Deputy Dist. Attys., Las Vegas, NV, for defendant Clark County, Nevada; Clark County Sanitation District; Las Vegas Valley Water Dist.

Val Steed, Chief Civ. Deputy Atty., Las Vegas, NV, for defendant City of Las Vegas.

Mark L. Zalaoras, Deputy City Atty., North Las Vegas, NV, for defendant City of North Las Vegas.

## ORDER

PRO, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment (# 109) and Plaintiff's Statement of Undisputed Facts in Support of Motion for Summary Judgment (# 110), filed on June 25, 1992. On July 17, 1992, Oppositions were filed on behalf of Defendants Clark County, Clark County Sanitation District, and the Las Vegas Valley Water District (# 118); the City of Las Vegas (# 119); and the City of North Las Vegas (# 120). Also on that date, the City of North Las Vegas filed Objections to Plaintiff's Statement of Undisputed Facts (# 121). On July 27, 1992, Plaintiff filed its Reply (# 123).

### I. Kern River's Compliance with Deep Burial Order.

On January 17, 1991, this Court granted Kern River immediate occupancy over private and public lands on which to construct a natural gas pipeline. Order (# 38). In that Order, the Court (1) required the parties to coordinate the vertical alignment of the pipeline, (2) required the Defendants to provide Kern River with in-

formation concerning proposed future facilities to justify points of deep burial, and (3) compelled Kern River to comply with a deep burial requirement. Additionally, Kern River claims that it voluntarily elected to construct its pipeline at deep burial depths both on dedicated public rights-of-way and on non-dedicated private lands. Kern River asserts that it incurred several million dollars of additional costs making this accommodation.

Kern River now moves the Court to bar Defendants from seeking damages relating to utility infrastructure conflicts. Kern River argues that because it complied with the Order of Immediate Occupancy's (# 38) deep burial requirement, which was designed "to insure against the destruction of the existing and proposed public uses of the rights-of-way subject to Kern River's pipeline easement," it should now be insulated from damages for interference with other public uses of the rights-of-way.

Kern River is correct that the Court's deep burial requirement was designed to minimize infrastructure conflicts. However, in attempting to minimize the conflicts, the Court did not rule or imply that damages would be altogether barred. The Court was determining whether Kern River's condemnation would be tantamount to a destruction of an existing public use under eminent domain law. Whether or not infrastructure conflicts remain after the deep burial is an issue for the jury to decide. To the extent that Kern River has eliminated such conflicts, the damage award set by the jury will no doubt be commensurately lower. Summary judgment is precluded on this issue because material issues of fact remain.

II. Substitution Damages.

■ Kern River also moves the Court to bar Defendants from seeking substitution damages. Defendants claim that substitution damages are the appropriate measure of "just compensation" required by the Takings Clause of the Fifth Amendment. Although the Fifth Amendment refers only to compensation for "private property," the Supreme Court recently held that the Tak-

ings Clause encompasses the property of state and local governments when it is condemned by the United States. *United States v. 50 Acres of Land (Duncanville)*, 469 U.S. 24, 31, 105 S.Ct. 451, 455, 83 L.Ed.2d 376 (1984).

■ Defendants define substitution damages as the cost of supplying whatever substitute facilities are reasonably necessary to enable a local community to provide public facilities to its residents in as adequate a manner as it would had the condemnation not occurred. Opposition (# 118) at 11 (citing *City of Fort Worth v. United States*, 188 F.2d 217, 222 (5th Cir. 1951); *United States v. Arkansas*, 164 F.2d 943 (8th Cir.1947)).

The Supreme Court rejected substitution as a proper measure of damages for private condemnees in *United States v. 564.54 Acres of Land (Lutheran Synod)*, 441 U.S. 506, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979). In *Lutheran Synod*, the Supreme Court considered whether a church's camp facilities which were being condemned should be valued by a fair market value or a substitution standard. The Court held that because there was a market for camps, albeit a slow one, fair market value was a proper method of computing "just compensation" for Fifth Amendment purposes. 441 U.S. at 517, 99 S.Ct. at 1860.

■ The Supreme Court extended the *Lutheran Synod* holding to apply to public condemnees in *Duncanville*, 469 U.S. 24, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984). Thus, where readily ascertainable, fair market value is the proper measure of damages for public condemnees. In *Duncanville*, the Supreme Court held that the Constitution only required the federal government to pay fair market value for its condemnation of a municipal sanitary landfill when that figure was easy to calculate. The city claimed that it should be paid for the reasonable cost of a substitute facility. The Court noted that expert testimony had established that there was a fairly robust market for sanitary landfill property, making it relatively easy to determine fair market value.

Some of the language in *Lutheran Synod* suggests that the Supreme Court anticipated that substitution damages would apply to the condemnation of some types of public facilities:

The instances in which market value is too difficult to ascertain generally involve property of a type so infrequently traded that we cannot predict whether the prices previously paid, assuming there have been prior sales, would be repeated in a sale of the condemned property. *See United States v. Toronto, Hamilton & Buffalo Nav. Co.*, 338 U.S. 396, 402 [70 S.Ct. 217, 221, 94 L.Ed. 195] (1949); *cf. United States v. Miller*, 317 U.S. 369, 374–75 [63 S.Ct. 276, 280–81, 87 L.Ed. 336] (1943). *This might be the case, for example, with respect to public facilities such as roads or sewers.*

441 U.S. at 513, 99 S.Ct. at 1858 (emphasis added) (quoted with approval in *Duncanville*, 469 U.S. at 30 n. 12, 105 S.Ct. at 455 n. 12).

Applying these Supreme Court decisions to the facts of this case, there remains a genuine issue as to whether the fair market value of the condemned pipeline easement can be readily ascertained. Kern River's appraiser, William G. Kimmel, has calculated a figure which he will testify represents the fair market value of Kern River's easement. Motion (# 109) at 13. Defendants have argued that Kern River's entire argument is premature; appraisers must testify at trial whether one method or a combination of methods is a more appropriate way to value the condemned property interest. Opposition (# 118) at 17.

■ Assuming fair market value cannot be readily ascertained from the expert testimony, substitution damages will have to be considered as an alternative method of calculating "just compensation." Some of the parties have argued that any increase in costs to Defendants stemming from the placement of the pipeline should not be looked upon as a form of substitution. This Court disagrees. The Supreme Court's use of substitution damages whenever fair market value is unavailable is merely another way of saying that it is only when the triers of fact cannot measure the objectively-established value by measuring the value of property as transferable from one owner to another, that they should look to the loss of value wrought upon the condemnee. *Duncanville*, 469 U.S. at 35–36, 105 S.Ct. at 457–58.

In this case, if the jury cannot readily ascertain the fair market value of the pipeline easement, Defendants' additional costs incurred in providing reasonably necessary services will be the appropriate measure of damages. Because there remains a genuine issue of material fact, summary judgment on this issue will be denied.

III. Private Land on Proposed Centennial Parkway.

■ Finally, Kern River seeks an order from this Court that Defendants cannot seek compensation for patent reservations running on private property along the proposed Centennial Parkway. Defendants argue that they are entitled to some compensation because, if and when they build a road or install any utility services along the proposed route, construction will be more difficult than it would have been if the gas pipeline had not been present.

Rule 71A(c) of the Federal Rules of Civil Procedure requires plaintiffs to include in their caption a description of the property at issue:

The complaint shall contain a caption as provided in Rule 10(a), except that the plaintiff shall name as defendants the property, designated generally by kind, quantity, and location, and at least one of the owners of some part or interest in the property.

Rule 71A(c). In an earlier proceeding, Defendants moved the Court for an order that Kern River amend its Complaint to identify the property being condemned. That Motion was granted. *See* Order of December 3, 1990, 757 F.Supp. 1110, 1120. Thereafter, Kern River and Defendants stipulated to add additional tracts of land to the Complaint. The relevant segments of the dedicated rights-of-way to be burdened by the pipeline easement are identified in the record.

Kern River's complaint did not describe the miles of patent reservations on private property along the proposed Centennial Parkway. Thus, to the extent that Defendants now seek compensation for burdening some interest they may have on that land, the description of the land is insufficient. Simply put, in the instant case, the Court does not have jurisdiction over the appropriate res with which to adjudicate whether Defendants are entitled to compensation.

Defendants have not previously moved the Court to modify the caption to include any extra ownership interest they might have in the additional property, nor can Defendants do so at this late date. Other courts have decided similarly that "[w]here ... the application seeks to amend the petition by adding to the property originally described in the petition, it has been held that such application must be denied." *See* 6 Nichols on Eminent Domain § 26.1123 at text accompanying n. 6 (1992) (notes and citations omitted). At this late stage in the proceedings, it would be prejudicial to Plaintiff for Defendants to add additional tracts of land and types of ownership interest to this suit.

Additionally, even if the Court had jurisdiction over any governmental property right located on private property along the Centennial Parkway, the Court views the issue of damages to be too speculative to be presented to a jury. Defendants have not yet acquired true easements over the property. They have not provided any concrete plans or descriptions of how burdensome a pipeline might be to Defendants who might build a road or might install utilities along the same route at an as-yet unspecified date in the future. Summary judgment on this issue will be granted in favor of Plaintiff Kern River.

### ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment (# 109) is hereby granted in part and denied in part consistent with this Order. .