CITY OF LAS VEGAS, NEVADA, A MUNICIPAL CORPORATION, APPELLANT/CROSS-RESPONDENT, v. CLIFF SHADOWS PROFESSIONAL PLAZA, LLC, A DOMESTIC LIMITED LIABILITY COMPANY, RESPONDENT/CROSS-APPELLANT.

No. 55877

January 31, 2013

293 P.3d 860

*Lewis & Roca LLP* and *Daniel F. Polsenberg* and *Joel D. Henriod*, Las Vegas; *Bradford R. Jerbic*, City Attorney, and *James W. Erbeck*, Chief Deputy City Attorney, Las Vegas, for Appellant/Cross-Respondent.

*Law Offices of Kermitt L. Waters* and *Kermitt L. Waters, James J. Leavitt, Michael A. Schneider*, and *Autumn L. Waters*, Las Vegas, for Respondent/Cross-Appellant.

*Armstrong Teasdale, LLP*, and *R. Douglas Kurdziel*, Las Vegas, for Amicus Curiae City of Henderson.

*David J. Roger*, District Attorney, and *Leslie A. Nielsen*, Deputy District Attorney, Clark County, for Amicus Curiae Clark County.

Before the Court EN BANC.

## OPINION

By the Court, SAITTA, J.:

In this appeal and cross-appeal, we resolve issues arising from an eminent domain action brought by appellant City of Las Vegas (the City) to acquire a 40-foot-wide strip of real property from respondent Cliff Shadows Professional Plaza, LLC. Title to this property was originally acquired by Cliff Shadows' predecessor-in-interest through a federal land patent that was issued pursuant to the Small Tract Act of 1938, 43 U.S.C. § 682a (1938), *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 702, 90 Stat. 2743, 2789 (1976). The land patent states that the property "is subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes, to be located along the boundary of said land." The issues raised are whether (1) the district court erred in determining that the federal land patent did not create a 33-foot-wide easement that the City is entitled to use, (2) the district court erred in determining that the City's proposed use of the easement constitutes a taking of private property constitutionally requiring just compensation in return, (3) the district court erred in disregarding the easement when it computed just compensation, and (4) the district court's award of attorney fees was an abuse of discretion.

We conclude that (1) the district court erred in determining that the federal land patent did not create a 33-foot-wide easement because the plain meaning of the patent's language creates a valid public easement and (2) the district court erred in determining that the City's proposed use of the easement constitutes a taking because the use of this easement is within its scope and does not strip Cliff Shadows of a property interest. In light of these conclusions, Cliff Shadows was not entitled to just compensation or attorney fees.

### FACTS AND PROCEDURAL HISTORY

In 1956, pursuant to the Small Tract Act, the Bureau of Land Management of the United States Department of the Interior (BLM) issued a patent conveying the property in question to Cliff Shadows' predecessor-in-interest, Mary Patricia Tovey. The patent conveyed title subject to a future right-of-way:

> This patent is subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes, to be located along the boundary of said land.

Tovey recorded this patent in 1957. Thereafter, in 2008, Cliff Shadows purchased the property and recorded a deed, which conveyed title to Cliff Shadows subject to "[r]estrictions, conditions, reservations, rights, rights of way and easements now of record, if any, or any that actually exist on the property."

A 40-foot-wide strip of Cliff Shadows' property was designated by the City of Las Vegas for use in the Cliff Shadows Parkway Improvement Project. The improvement project sought to make use of the federal land patent's 33-foot right-of-way, plus an additional 7 feet, to widen a roadway. The issues on appeal concern the City's right to use the 33-foot right-of-way provided for in the federal land patent.

The City's appraiser deemed the highest and best use of the 40-foot-wide strip of property to be residential development and the unencumbered portions thereof worth $15.50 per square foot. At about 4,000 square feet, the City's appraiser valued the unencumbered portions of the strip of property at $61,876. The appraiser determined that the portion of the 40-foot-wide strip of property that was burdened by the right-of-way had no value due to the encumbrance and assigned a token value of $100 to this encumbered portion of the 40-foot-wide strip of property. Pursuant to the appraiser's valuations, the City offered to pay Cliff Shadows $62,400 for the 40-foot-wide strip of property. Cliff Shadows rejected the offer.

Thereafter, the City filed an eminent domain action seeking to attain a permanent easement and all rights, title, and interest to the 40-foot-wide strip of property in order to construct its improvement project. The complaint requested that the district court ascertain the amount of just compensation due to Cliff Shadows. Cliff Shadows answered the complaint and filed a counterclaim for inverse condemnation. In a subsequent motion, the City clarified that, despite naming the entire 40-foot-wide strip of property in its complaint, it was not seeking to acquire, through condemnation, the property encumbered by the 33-foot right-of-way provided for in the federal land patent. The City asserted that it sought to utilize its existing rights to the 33-foot right-of-way under the federal land patent's easement and attain, by condemnation, the remaining 7-foot portion of land unencumbered by the easement.

Cliff Shadows moved for partial summary judgment, arguing that the federal land patent did not create an easement for the City's benefit and that the City was unconstitutionally taking Cliff Shadows' property. Cliff Shadows asserted that it was entitled to $394,490 in just compensation, which represents $15.50 per square foot for both the encumbered and the unencumbered portions of the property. The City filed an opposition to Cliff Shadows' partial summary judgment motion and a countermotion for

summary judgment, arguing that Cliff Shadows was not entitled to compensation because the City's use of the right-of-way for roadway purposes did not constitute a taking. Around this time, the City rejected a $228,707 offer of judgment made by Cliff Shadows.

After holding a hearing, the district court entered an order granting Cliff Shadows partial summary judgment. The district court found that, although the federal land patent reserved a 33-foot-wide easement across the 40-foot-wide strip of property identified in the City's eminent domain complaint, the City lacked any right to use this easement because the federal patent did not specifically name the City. The district court also determined that the 33-foot-wide easement must be disregarded when computing just compensation for Cliff Shadows. It entered partial summary judgment against the City for $394,490, which it computed by awarding $15.50 per square foot to Cliff Shadows for both the encumbered and unencumbered portions of the property.

Cliff Shadows then moved for attorney fees, asserting that it was entitled to those fees under (1) NRS 17.115, which governs attorney fee awards in connection with offers of judgment; (2) NRS 37.185, which provides that attorney fees may be awarded to successful landowners in inverse condemnation proceedings; and (3) the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act),[1] which also allows attorney fees to a successful landowner in an inverse condemnation action. The City opposed Cliff Shadows' motion for attorney fees.

The district court granted in part and denied in part Cliff Shadows' motion for attorney fees, determining that Cliff Shadows was entitled to a portion of the attorney fees that it sought under NRS 17.115 because it obtained a judgment more favorable than its offer of judgment. However, it also determined that Cliff Shadows was not entitled to attorney fees under NRS 37.185 or the Relocation Act.

Both the City and Cliff Shadows appealed, challenging the district court's partial summary judgment and its decision to award only partial attorney fees, respectively.

## DISCUSSION

On appeal, the City challenges the district court's conclusions that the federal land patent did not grant the City an easement with respect to the 33-foot-wide right-of-way and that, as a result, Cliff Shadows is entitled to just compensation for the use of that right-of-way as a taking. Cliff Shadows disagrees and asserts that it is entitled to additional attorney fees under NRS 37.185 and the Relocation Act.

---

[1]42 U.S.C. § 4654(a) (2006) (codified in Nevada under NRS 342.105).

*The district court erred in determining that the federal land patent
did not create an easement that the City is entitled to use*

The City asserts that the federal land patent created an easement
that the City is entitled to use. We agree.

The interpretation of an instrument allegedly creating an ease-
ment is a question of law that we review de novo. *See Brooks
v. Bonnet*, 124 Nev. 372, 375-76, 185 P.3d 346, 348 (2008). In
interpreting a federal land patent, we look to the patent's specific
language. *See id.* at 375, 185 P.3d at 348 (an instrument creat-
ing an easement should be interpreted like a contract); *Ringle v.
Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004) (''[W]hen a
contract is clear, unambiguous, and complete, its terms must be
given their plain meaning and the contract must be enforced as
written.'').

Here, again, the patent states that it ''is subject to a right-of-way
not exceeding 33 feet in width, for roadway and public utilities
purposes.'' The term ''right-of-way'' is defined as ''[t]he right to
pass through property owned by another.'' *Black's Law Dictionary*
1440 (9th ed. 2009). Accordingly, ''a right of way is an easement.''
*Kurz v. Blume*, 95 N.E.2d 338, 339 (Ill. 1950). Further, the term
''subject to'' generally suffices to create an easement. *See City
of Revere v. Boston/Logan Airport Associates*, 416 F. Supp. 2d
200, 207 (D. Mass. 2005); *Beebe v. Swerda*, 793 P.2d 442, 444-
46 (Wash. Ct. App. 1990). Accordingly, here, the federal patent's
use of the terms ''right-of-way'' and ''subject to'' created an ease-
ment on Cliff Shadows' property for roadway and public utility
purposes.[2]

Further, although Cliff Shadows argues that the right-of-way
was not reserved for use by the City, we conclude that the City is

---

[2]Cliff Shadows asserts that based upon the disposition in *Kern River Gas v.
18.91 Acres of Land*, 809 F. Supp. 72 (D. Nev. 1992), issue preclusion pre-
vents the City from asserting that the patent gave it easement rights. However,
Cliff Shadows is improperly raising this argument for the first time on appeal.
*See Schuck v. Signature Flight Support*, 126 Nev. 434, 437, 245 P.3d 542, 544
(2010). Cliff Shadows also argues that the City is estopped from asserting
rights to the easement because the City waited 50 years to assert its rights.
This argument fails because the timing of the City's claim is irrelevant. *Keener
v. State*, 889 P.2d 1063, 1067 (Alaska 1995) (rejecting landowners' laches ar-
gument because the state need not do anything to confirm ownership of a right-
of-way created in a federal patent unless and until its rights are challenged);
*City of Phoenix v. Kennedy (Kennedy I)*, 675 P.2d 293, 294-95 (Ariz. Ct. App.
1983) (rights-of-way created by a federal patent need not be formally accepted
to be effective).

entitled to use the easement. In *Stoltz v. Grimm*, this court considered two federal land patents that contained language nearly identical to the patent in this case. Those patents provided:

> This patent is issued subject to an easement for a road-way not exceeding 33 feet in width, to be constructed across said land, or as near as possible, to the exterior boundaries.

100 Nev. 529, 531, 689 P.2d 927, 928 (1984). Even though the City of Reno was not specifically named in the patents, this court treated those patents as compelling a dedication[3] to the City of Reno, concluding that the landowner who held those patents "was required to dedicate the land to the city under the language in the 1952 land patents." *Id.* at 535, 689 P.2d at 931.

Similarly, other jurisdictions have found public easements when considering the validity of patents containing the type of language found in the patent at issue here. *See, e.g., State, Dept. of Highways v. Green*, 586 P.2d 595, 601-02 (Alaska 1978) (holding that 33-foot-wide right-of-way conveyed pursuant to the Small Tract Act was effective despite the fact that a 50-foot-wide right-of-way covered the same area); *Mountain States Tel. & Tel. Co. v. Kennedy (Kennedy II)*, 711 P.2d 653, 656 (Ariz. Ct. App. 1985) (upholding public utility company's right to install cable lines in right-of-way conveyed under the Small Tract Act). For example, in *City of Phoenix v. Kennedy (Kennedy I)*, a landowner refused to allow the City of Phoenix to use rights-of-way that the City of Phoenix claimed were created by federal land patents conveyed under the Small Tract Act. 675 P.2d 293, 294-95 (Ariz. Ct. App. 1983). The patents contained the following language:

> This patent is subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes, to be located across said land or as near as practicable to the exterior boundaries.

*Id.* at 294.

The City of Phoenix intended to "improve the street running alongside [the landowner's] two parcels and install sewer and water lines." *Id.* The *Kennedy I* court noted that "because a federal grant is being construed, any doubts are to be resolved in favor of the government, so as to accomplish the legislative intent behind the grant." *Id.* at 295. The court explained that the intent of the

---

[3]A dedication of land for a street creates a public easement. *See Carson City v. Capital City Entm't*, 118 Nev. 415, 421, 49 P.3d 632, 635-36 (2002) ("[T]he fee of land dedicated for a street remains in the owner, subject to a public easement in the land, which is vested in the municipality.").

Small Tract Act "was to utilize public lands effectively." *Id.* The right-of-way "was included so as to avoid imposing the heavy burden on local governments of subsequently having to acquire an easement when the time came to install utilities and roadways." *Id.* The court concluded that the patents' language sufficed to "create a floating easement for a right-of-way." *Id.* Accordingly, the *Kennedy I* court upheld the City of Phoenix's right to improve a street and install public utilities on the landowner's parcels. *Id.* Like in *Stoltz*, the lack of specific reference to any particular governmental body in the federal land patents did not prevent the *Kennedy I* court from finding that the patents gave the City of Phoenix a right to the easement.

Further, even if the patent's lack of specificity resulted in ambiguity, it is a well-established rule of construction that any ambiguities within a federal land patent are construed in favor of the government. A leading treatise explains:

> As a general rule, where the language of a public land grant is subject to reasonable doubt, ambiguities are resolved strictly against the grantee and in favor of the government. This is the reverse of the rule controlling the construction of grants or conveyances by private grantors.

3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 64:7, at 491-92 (7th ed. 2008) (footnotes omitted); *see United States v. Union Pacific R. Co.*, 353 U.S. 112, 116 (1957) ("[L]and grants are construed favorably to the Government, . . . [and any doubts] are resolved for the Government, not against it."); *see also Kennedy II*, 711 P.2d at 655 (noting that these rules of construction are "equally applicable [where] the federal government reserves an interest in land for entities [that are] not party to the grant").[4]

Accordingly, we conclude that the federal land patent burdening Cliff Shadows' property creates a public easement that the City has a right to utilize based on (1) our interpretation of the language

---

[4]Cliff Shadows argues that Nevada extends greater protection to landowners in the eminent domain context than other jurisdictions and that, as a consequence, the decisions of other jurisdictions are irrelevant. While Nevada "enjoys a rich history of protecting private property owners against government takings," *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 670, 137 P.3d 1110, 1127 (2006), the issue of how to interpret the language of a federal land patent is one of first impression. This court has often relied on the decisions of other jurisdictions when, as here, it is faced with issues of first impression. Thus, the decisions of other jurisdictions offer this court relevant guidance with respect to interpreting the federal land patent.

of the patent at issue and other jurisdictions' similar interpretations of federal land patents with nearly identical language and (2) the rule of construction for federal land patents requiring any ambiguities to be construed in favor of the government.[5] The district court thus erred in determining that the federal land patent did not create a valid easement that the City is entitled to use for roadway and utility purposes.[6]

*The district court erred in determining that the City's proposed use of the easement constitutes a taking*

The City asserts that the district court erred in determining that the City's use of the easement as part of its improvement project constitutes a taking. Cliff Shadows argues that if a valid easement exists, then the scope of that easement allows for roadways to be created only if they directly benefit the owners of property issued through federal land grants pursuant to the Small Tract Act. Cliff Shadows contends that the City's proposed use of the easement is beyond the scope of the easement, thereby constituting a taking.[7] We agree with the City.

---

[5]Cliff Shadows asserts that this court should construe the patent's language in its favor and cites to *State v. Jones*, 52 S.E. 240, 245 (N.C. 1905) (Connor, J., dissenting), and *Aero Auto Parts v. State, Department of Transportation*, 253 N.W.2d 896, 898 (Wis. 1977), which state that *statutes* providing for the power of eminent domain should be strictly construed and *statutes* favoring private landowners should be liberally construed. This assertion is flawed because interpreting the federal land patent is a matter of contract, not statutory, interpretation. *See Brooks v. Bonnet*, 124 Nev. 372, 375, 185 P.3d 346, 348 (2008) (an instrument creating an easement should be interpreted like a contract).

[6]Cliff Shadows argues that if the federal patent created an easement, it cannot be enforced against Cliff Shadows because it is a bona fide purchaser. This argument is meritless because the federal patent was recorded by Cliff Shadows' predecessor-in-interest in 1957. *See* NRS 111.320 (a recorded easement imparts notice to all persons of the contents of the easement); *Probasco v. City of Reno*, 85 Nev. 563, 565, 459 P.2d 772, 773 (1969) ("The recording of a deed of a positive easement makes it binding upon all subsequent owners.").

[7]Cliff Shadows also argues that the City is estopped from asserting that there has not been a taking because the City included the encumbered and unencumbered portions of the strip of property in its initial eminent domain complaint. We disagree. The record and the district court's findings of facts and conclusions of law reflect that the City maintained its position that it was not seeking to condemn all property interests in the 33-foot right-of-way section of property. Further, NRCP 15(a) and (b) permit the City to amend its complaint at a later date to match the property it is actually taking. *See United States v. Herrero*, 416 F.2d 945, 947 (9th Cir. 1969) (affirming order permitting the government to amend its condemnation complaint under FRCP 15(a)); *see also Hay v. Hay*, 100 Nev. 196, 198, 678 P.2d 672, 674 (1984) ("Because Nevada is a notice-pleading jurisdiction, our courts liberally construe pleadings to

Whether a taking has occurred is a question of law that this court reviews de novo. *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 661, 137 P.3d 1110, 1121 (2006). The Nevada Constitution provides that "[p]rivate property shall not be taken for public use without just compensation having been first made, or secured." Nev. Const. art. 1, § 8(6). Similarly, the Takings Clause of the Fifth Amendment of the United States Constitution proscribes the government from taking "private property . . . for public use, without just compensation." U.S. Const. amend. V.

One "must have a property interest . . . to support a takings claim." *Sisolak*, 122 Nev. at 658, 137 P.3d at 1119. Thus, when analyzing whether the government's activity constitutes a taking, a court must first assess if one has a legitimate interest in property that is affected by the government's activity. *Id.* "It is well established that an individual's real property interest in land supports a takings claim." *ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 645, 173 P.3d 734, 738 (2007). "A taking can arise when the government regulates or physically appropriates an individual's private property." *Id.* at 647, 173 P.3d at 740. A physical appropriation occurs if "the government seizes or occupies private property or ousts owners from their private property." *Id.*

Here, whether the City's proposed use of the easement as part of its improvement project is a taking turns on whether the use of the easement fits within the easement's scope as articulated in the federal land patent.

*The City's improvement project fits within the scope of the easement*

After having construed the patent in favor of the City and its entitlement to the easement therein, we now construe the scope of that easement.

The scope of an easement is defined by the terms of the instrument creating it. *Brooks v. Bonnet*, 124 Nev. 372, 375, 185 P.3d 346, 348 (2008). "As with any other contract, courts must interpret the specific language of the instrument creating the easement

place into issue matters which are fairly noticed to the adverse party."); *Dept. of Transp. v. El Dorado Properties*, 971 P.2d 481, 488 (Or. Ct. App. 1998) ("When [condemnor] came to believe that its original estimate of value was too high, it was entirely appropriate for it to amend its complaint to reflect that new evaluation.").

to identify the easement's scope." *Id.* " '[A]n easement obtained by a government entity for a public use is only as broad as necessary for the accomplishment of the public purpose for which the easement was obtained.' " *Sisolak,* 122 Nev. at 660, 137 P.3d at 1120 (quoting *S.O.C., Inc. v. The Mirage Casino-Hotel,* 117 Nev. 403, 409, 23 P.3d 243, 247 (2001)). In general, the scope of an easement is strictly construed in favor of the landowner.[8] *S.O.C., Inc.,* 117 Nev. at 408, 23 P.3d at 247. Furthermore, "[a] party is privileged to use another's land only to the extent expressly allowed by the easement." *Id.*

Here, the City's improvement project fits within the scope of the easement created by the federal patent. Without qualification, the federal land patent states that it is subject to an easement for "roadway" and "public utilities" purposes, and the City's improvement project serves those very purposes. Contrary to Cliff Shadows' assertion, the patent does not explicitly or implicitly express that roadways may be created only if they directly benefit the owners of property issued pursuant to the Small Tract Act. *See Bernal v. Loeks,* 997 P.2d 1192, 1194 (Ariz. Ct. App. 2000) (the Small Tract Act "allows for roadway use without qualification"). The City's proposed improvement project does not exceed the scope of the plain language of the easement.

*No taking has occurred through the City's proposed use of the easement*

The United States Supreme Court has stated that it "assuredly *would* permit the government to assert a permanent easement that was a pre-existing limitation upon the landowner's title." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1028-29 (1992). This rule is well accepted by various jurisdictions. *See, e.g., Daniel v. County of Santa Barbara,* 288 F.3d 375, 383 (9th Cir. 2002) (no taking occurs when the government simply exercises its option to use an existing easement); *U.S. v. 30.54 Acres of Land, Situated in Greene Co.,* 90 F.3d 790, 792 (3d Cir. 1996) (where a navigational servitude "was a preexisting limitation on the landowners' title to riparian land," the government's use of the servitude was not a taking); *Keener v. State,* 889 P.2d 1063, 1069 (Alaska 1995) ("The State does not have to pay a property owner

---

[8]To be clear, interpreting the federal land patent and the easement involve two different processes. As demonstrated above, we interpret a federal land patent's ambiguities in favor of the government. 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 64:7, at 491-92 (7th ed. 2008); *see Union Pacific,* 353 U.S. at 116; *see also Kennedy II,* 711 P.2d at 655. However, we interpret the scope of the easement within the federal land patent in favor of the landowner. *See S.O.C., Inc.,* 117 Nev. at 408, 23 P.3d at 247.

for a preexisting right of way [under the Alaska Constitution]."); *Bennett v. Tarrant Cty Water Control*, 894 S.W.2d 441, 448 (Tex. App. 1995) (holding that "the mere enforcement of an existing easement does not rise to the level of a 'taking'" under the Texas Constitution). Thus, a taking does not occur when the government uses its own easement without exceeding the easement's scope. *See Daniel*, 288 F.3d at 383; *30.54 Acres of Land*, 90 F.3d at 792; *Keener*, 889 P.2d at 1069; *Bennett*, 894 S.W.2d at 448.

Therefore, the City's attempt to use its easement created in the federal land patent does not constitute a taking in this case. The City is not attempting to create an easement over a parcel that was never previously burdened. *Cf. Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979) (imposition of navigational servitude on marina constituted a taking). The City's easement existed when Cliff Shadows purchased the property. Cliff Shadows therefore lacks the property right that the City attempts to use. As established above, the City's proposed use of the easement fits within its scope, and no taking occurred.

Accordingly, the district court erred in determining that the City's proposed use of the easement constitutes a taking.[9]

In light of the conclusions above, we need not discuss at length the issues of whether the district court (1) erred in disregarding the easement when it computed just compensation or (2) abused its discretion in awarding attorney fees.

Our conclusion that no taking occurred in the City's use of its easement disposes of the just compensation issue. The dissent contends that we must address the total valuation of Cliff Shadows' property. Valuation of the entire strip of property is not disputed on appeal. As to the 33-foot-wide easement, no taking has occurred; thus, Cliff Shadows lacks a right to compensation with respect to the City's use of the easement. As to the remaining unencumbered portions of Cliff Shadows' property, neither Cliff Shadows nor the City objected to the valuation of that land by the City's appraiser. In fact, Cliff Shadows actually used this valuation in its motion for summary judgment, suggesting that Cliff Shadows implicitly agreed with the valuation. Though our dissenting colleagues correctly articulate the law as to valuation, we shall not reach this issue as it is not on appeal.

---

[9]Cliff Shadows appears to rely on *McCarran International Airport v. Sisolak*, 122 Nev. 645, 137 P.3d 1110 (2006), for the proposition that a taking occurs when a government entity utilizes an easement arising from a federal land patent. This reliance is misplaced. In *Sisolak*, this court concluded that a taking arose from a situation where a government entity exceeded the scope of its easement. *Id.* at 660-61, 667, 137 P.3d at 1120-21, 1125. Here, unlike in *Sisolak*, the City's street-widening project does not exceed the scope of its easement, such that a taking does not occur as a result of the City's use of that easement.

Since no taking occurred in the City's use of its easement, Cliff Shadows is not the prevailing party on any of its claims and thus is not entitled to attorney fees.

## CONCLUSION

We reverse the district court's partial summary judgment regarding (1) the determination that the federal land patent did not create an easement that the City is entitled to use and (2) the determination that the City's proposed use of the easement constitutes a taking. Further, we vacate the awards of just compensation and attorney fees to Cliff Shadows and remand this matter to the district court for further proceedings consistent with this opinion.

PICKERING, C.J., and HARDESTY, PARRAGUIRRE, and DOUGLAS, JJ., concur.

GIBBONS, J., with whom CHERRY, J., agrees, dissenting:

The City initiated an eminent domain action against Cliff Shadows to acquire a 40-foot-wide strip of property. The property is subject in part to a right-of-way not exceeding 33 feet in width for roadway and public utilities purposes. Therefore, at least a 7-foot width of the property is not subject to the right-of-way. Cliff Shadows filed a motion for partial summary judgment and the City filed a countermotion for summary judgment. The City conceded that the fee portion of the property subject to the right-of-way has some value and that the portion of the property not subject to the right-of-way is valued at $61,186.

In *McCarran International Airport v. Sisolak*, 122 Nev. 645, 137 P.3d 1110 (2006), we concluded that "requiring uncompensated conveyance of [an] easement outright would violate the Fourteenth Amendment." *Id.* at 661, 137 P.3d at 1121 (alteration in original) (quotations omitted). We further concluded that "even if the Government physically invades only an easement in property, it must nonetheless pay just compensation." *Id.* at 666, 137 P.3d at 1124 (quotations omitted). We reasoned that "the Nevada Constitution contemplates expansive property rights in the context of takings claims through eminent domain. The drafters of our Constitution imposed a requirement that just compensation be secured prior to a taking, and our State enjoys a rich history of protecting private property owners against government takings." *Id.* at 670, 137 P.3d at 1127. Finally, we concluded that "the market value of the property should be determined by reference to the highest and best use for which the land is available and for which it is plainly adaptable." *Id.* at 671, 137 P.3d at 1128 (quotations omitted).

Further, in *City of North Las Vegas v. Robinson*, 122 Nev. 527, 134 P.3d 705 (2006), this court unanimously concluded that "a

fact-finder should determine . . . the value of the whole property based on the whole property's highest and best use. Therefore, it is improper for a fact-finder to focus solely on the condemned portion when determining its value." *Id.* at 531-32, 134 P.3d at 708. Analogous to the right-of-way in this case, the City of North Las Vegas had sought to condemn a portion of the property for a road-widening project.

Since the majority reverses the partial summary judgment in favor of Cliff Shadows, I conclude that genuine issues of material fact remain as to the valuation of the whole Cliff Shadows property, which includes the 33-foot-wide right-of-way and the remaining 7-foot width of the strip of property.