# IN THE SUPREME COURT OF THE STATE OF NEVADA

JEFFREY A. MCCLURE, INDIVIDUALLY AND AS CO-TRUSTEE OF THE MCCLURE FAMILY LIVING TRUST; AND DARCEL JONAY MCCLURE. INDIVIDUALLY AND AS CO-TRUSTEE OF THE MCCLURE FAMILY LIVING TRUST, Appellants, vs. DAVID R. STILES, AN INDIVIDUAL; AND KELLY RODRIQUES, AN INDIVIDUAL, Respondents.

No. 82382

FILED

JAN 1 3 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order dismissing claims in a real-property matter. Ninth Judicial District Court, Douglas County; Thomas W. Gregory, Judge. Reviewing the dismissal de novo, *Dezzani v. Kern & Assocs., Ltd.*, 134 Nev. 61, 64, 412 P.3d 56. 59 (2018), we affirm.

In 1947, Clyde Taylor recorded the A. Cohn Tract map, which subdivided several parcels of land bordering Lake Tahoe. J.L. and Kathryn DeLorey owned Lot 3 and conveyed a portion of that lot to Paul Diggle in 1955 (DeLorey-Diggle Deed), which resulted in the DeLoreys retaining a littoral portion of the property, and Diggle receiving a large plot of land, including a littoral portion bordering the DeLoreys' retained land. The DeLorey-Diggle Deed contained covenants and restrictions, including, as relevant here: (1) a building restriction prohibiting either party from constructing any building. except a boathouse, on a certain portion of beach

22-01441

frontage (Beachfront Building Restriction); and (2) a permanent easement allowing Diggle to use the DeLoreys' beach for "bathing or boat mooring purposes" (Beach-Use Easement). Diggle later built a boathouse as permitted in the DeLorey-Diggle Deed.

In 1956, Diggle subdivided his land, conveying a portion to Zephyr Bejarano (Diggle-Bejarano Deed). This deed included 20 restrictions, covenants, conditions, and easements, all for "the purpose of regulating the development of Snug Harbor as a whole and for the protection of each and every individual parcel owner in the future" but did not contain a Beachfront Building Restriction. It granted Bejarano an easement to use the entire beach for "bathing and boating purposes." After subdividing and selling the parcels, Diggle retained the littoral portion of his land that bordered the DeLoreys' property. In 1962, Diggle recorded a "Declaration of Restrictions" for Snug Harbor that included the same 20 conditions, restrictions, easements, and covenants contained in the Diggle-Bejarano Deed. The CC&Rs did not include a Beachfront Building Restriction. Appellants Jeffrey and Darcel McClure purchased the Bejarano property in 2000.

In 2014, S.F. Pacific, LLC, the then owner of the DeLoreys' littoral property, and respondent Kelly Rodriques, the then owner of Diggles' littoral property, signed and recorded a "Reciprocal Cancellation of Deed Restriction," which purported to cancel the Beachfront Building Restriction in the DeLorey-Diggle Deed, while preserving the deed's other restrictions, covenants, and easements. After recording the cancellation, Rodriques conveyed the Diggle property to respondent David Stiles.

The McClures filed their First Amended Complaint (FAC) in 2016, asserting seven claims. At issue in this appeal are claims three

(O) 1947A

through seven, in which the McClures sought injunctive relief (claim 3), alleged nuisance (claim 4), and sought declaratory relief (claim 5), all based on the assertion that the McClures' Beach-Use Easement to use Snug Harbor for "bathing and boating/mooring purposes" included the use of Stiles' boathouse. The McClures also sought declaratory relief (claim 6) and alleged slander of title (claim 7), both based on Rodriques' cancellation of the Beachfront Building Restriction. Stiles and Rodriques filed motions to dismiss, arguing that (1) the Beach-Use Easement did not allow the McClures to use the boathouse, thus requiring dismissal of claims three through five; and (2) the McClures lacked standing to enforce the Beachfront Building Restriction, requiring dismissal of claims six and seven. The district court granted the motions to dismiss, concluding that the McClures did not have an easement to use the boathouse and that they lacked standing to enforce the Beachfront Building Restriction, as they were not third-party beneficiaries, and the common-scheme doctrine was inapplicable.

*The Beach-Use Easement does not include use of the boathouse*

The McClures argue that the easement allowing them to use the beach for "boating purposes" necessarily includes using the boathouse because (1) the boathouse existed before the easement's creation, (2) Diggle did not "carve out" boathouse use from the easement, and (3) storing boating equipment in the boathouse is a "reasonable interpretation" of "boating purposes." We disagree. *See City of Las Vegas v. Cliff Shadows Prof'l Plaza, L.L.C.*, 129 Nev. 1, 7, 293 P.3d 860, 863 (2013) (observing that the interpretation and legal effect of the document creating an express easement is subject to de novo review). While we draw every reasonable inference in the McClures' favor in reviewing the dismissal, *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009), we need

SUPREME COURT
OF
NEVADA

3

(O) 1947A

not accept as true allegations contradicted by exhibits attached to the plaintiff's complaint, *see Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993) ("[A] court may take into account . . . exhibits attached to the complaint when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted.").

The easement created by the DeLorey-Diggle Deed and extended by the Diggle-Bejarano Deed does not allow the McClures to use Stiles' boathouse, as it does not include the word "boathouse," nor does it grant the McClures use of the boathouse. *See Cliff Shadows Prof'l Plaza*, 129 Nev. at 11, 293 P.3d at 866 ("The scope of an easement is defined by the terms of the instrument creating it."). The McClures contend that a reasonable interpretation of the easement includes storing boating equipment because doing so is necessary for boating purposes, such as launching, but nothing in the factual content of their complaint supports drawing that inference. At least one court addressing this precise issue has concluded otherwise and we agree with its reasoning. *See Ezikovich v. Linden*, 618 A.2d 570, 573 (Conn. App. Ct. 1993) (concluding that an easement allowing the respondent to use a river front portion of property "for general boating purposes" did not allow the respondent to build a storage rack to hold boating equipment on the river because the storage rack "merely serve[s] to store the rowing shells" and is not needed "to launch or use the shells safely for the purposes of boating"). Further, the McClures tacitly conceded that the boathouse is not necessary to engage in boating purposes by acknowledging that they usually carry boating equipment to the beach. Accordingly, the district court properly concluded that the Beach-Use Easement does not allow the McClures to use Stiles' boathouse.

The McClures' arguments to the contrary are unpersuasive. First, the fact that the boathouse existed before the easement's creation, yet was not explicitly excluded in the easement, supports Stiles' interpretation that the easement does not include using the boathouse. *See Cliff Shadows Prof'l Plaza*, 129 Nev. at 12, 293 P.3d at 867 ("In general, the scope of an easement is strictly construed in favor of the landowner," and "[a] party is privileged to use another's land only to the extent expressly allowed by the easement." (quoting *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 247 (2001)). Second, accepting the factual allegations in the complaint as true, they do not show that the McClures are precluded from using the full Snug Harbor Beach unless they are allowed to use the boathouse. *See Sanchez*, 125 Nev. at 823, 221 P.3d at 1280 (observing that "[factual] allegations must be legally sufficient to constitute the elements of the claim asserted"). Because the McClures' Beach-Use Easement does not allow them to use Stiles' boathouse, the district court correctly granted respondents' motions to dismiss as to the third, fourth, and fifth claims.

*The McClures lack standing to pursue their claims regarding the Beachfront Building Restriction*

The McClures argue they have standing to pursue their sixth and seventh claims under either the third-party beneficiary doctrine or the common-scheme doctrine.[1] On de novo review, *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011), we agree with the district court's determination that the McClures lack standing to bring claims based on the Beachfront Building Restriction.

---

[1]The McClures do not argue that they have standing to enforce the covenant as Diggle's or Bejarano's successors in interest.

To begin, the McClures are not third-party beneficiaries because the complaint and attached exhibits do not show a clear intent on behalf of the DeLoreys to benefit Diggle's subdividees. *See Wood v. Germann*, 130 Nev. 553, 557, 331 P.3d 859, 861 (2014) (recognizing that a nonparty to a contract only has standing to enforce the contract when the nonparty is an intended third-party beneficiary). "To assert standing as a third-party beneficiary to a contract, a plaintiff must show (1) a clear intent to benefit the third party, and (2) the third party's foreseeable reliance on the agreement." *Boesiger v. Desert Appraisals, L.L.C.*, 135 Nev. 192, 197, 444 P.3d 436, 441 (2019).

The core of the McClures' argument is that the Cohn map showed that the properties were subdivided before the DeLorey-Diggle Deed, and thus, the DeLoreys created a general scheme that included the Beachfront Building Restriction when they included that covenant in the DeLorey-Diggle Deed. However, the exhibits attached by the McClures to their FAC belie their argument. While the McClures are correct that the Cohn map subdivided a large tract of land near Lake Tahoe, the DeLorey-Diggle Deed shows that the DeLoreys conveyed only a portion of Lot 3 from the Cohn map to Diggle. Further, the other operative documents, such as the Diggle-Bejarano Deed and the Snug Harbor CC&Rs, all recognize that Diggle subdivided the land. For example, the documents renewing and modifying the original CC&Rs explicitly recognized that the signer was "the owner of one of the seven parcels of land *subdivided by Paul Diggle from a parcel* conveyed to him by deed . . . on June 13, 1955" (emphasis added). Diggle did not include a Beachfront Building Restriction in any of the subdividing documents even though the DeLorey-Diggle Deed included such a restriction. Moreover, the DeLorey-Diggle Deed did not require

Diggle to subdivide the land or otherwise mention that Diggle planned to subdivide the land.

Thus, the FAC and its exhibits do not show a clear intent between the DeLoreys and Diggle for the Beachfront Building Restriction to benefit any of Diggle's subdividees, as there is no indication that Diggle planned to subdivide the property at that time. To the contrary, the exhibits show a clear intent not to benefit any of the subdividees as Diggle did not include the Beachfront Building Restriction, or any similar provision, in any of the subdividing documents. Accordingly, the district court correctly determined the third-party beneficiary doctrine did not apply.

In addition, while we have not yet adopted the common-scheme doctrine, assuming without deciding that the doctrine applies, we conclude it does not provide the McClures standing to enforce the Beachfront Building Restriction. The common-scheme doctrine requires one grantor to convey multiple lots to multiple grantees. *See, e.g., Maples v. Horton*, 80 S.E.2d 38, 41 (N.C. 1954) (explaining that a common scheme exists "[w]here the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement").

Here, the DeLoreys sold one tract of land to one grantee. That is insufficient to establish a general scheme, especially in light of the CC&Rs and deeds showing that Diggle subdivided the land that became the Snug Harbor Subdivision. Accordingly, the district court correctly determined that the McClures do not have standing to challenge the cancellation of the Beachfront Building Restriction, and thus, properly dismissed the McClures' sixth and seventh claims.

(O) 1947A

Based on the foregoing, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Silver

_____, J.
Cadish

_____, J.
Pickering

cc:    Hon. Thomas W. Gregory, District Judge
       David Wasick, Settlement Judge
       Phillip M. Stone
       Rollston, Henderson, Crabb & Johnson, Ltd.
       Alling & Jillson, Ltd.
       Douglas County Clerk

(O) 1947A